Radcliff, J.
delivered the opinion of the court. In this case, .the general question is, whether the plaintiff is enti *381 tied to recover a total or a partial loss? Two objections *have been made against the recovery for [*302] a total loss.
1. That the case of a total loss never existed.
2. That the purchase at St. Christophers by the super* cargo, who was also a part owner of the ship, and the subsequent sale at New York, without the consent of the defendant, or a previous offer or tender of the ship to him, amounted to a waiver of the abandonment, and an adoption of the vessel as his own.
With respect to the first, it appears that the ship was condemned at St. Christophers, as unfit to proceed on her voyage, on account of the injuries she had received; and the persons appointed to survey her there certified, that in their opinion, she could not be repaired for her full value when repaired. It is also admitted, on the part of the defendant, that in consequence of the disasters experienced on the voyage, she was so much injured, that it was impossible, from the high prices of wages and materials, to repair her at St. Christophers for half her value, so as to enable her to bring on her whole cargo. It is again admitted on' the part of the plaintiff, that in the spring following, the ship came to New York with a light cargo of molasses and rum, being about sufficient for ballast, and that she might have brought a full cargo of rum, which was proved to be very light and buoyant.
On these facts, I am of opinion that there existed a case of a technical total loss, and that the assured had a right to abandoned.(a) The question in such cases is not whether the *382 vessel be in a capacity, or in a situation to be repaired, so as to prosecute her voyage with a half, or any other portion of her cargo, but whether she is capable of proceeding, or of being refitted to proceed, and carry the whole. A vessel is not seaworthy, unless she be in a condition to carry a full cargo. The contrary idea is novel, and inconsistent with every principle of propriety and safety in navigation. The vessel was insured to perform her voyage, and carry her cargo from Batavia to New York. This she was disa bled from doing. The enterprise, therefore, failed, [*803] *by means of the perils insured against, and the plaintiff had a right to abandon, and claim a total loss.
■ The second question is, whether he has waived this right. The vessel was ordered by the court of admiralty at St. Christophers to be sold for the benefit of all concerned. The supercargo, who was one of the owners, purchased her on account of the assured.(a) The assured had previously, *383 on receiving advice of her condemnation, and before any notice of the purchase, abandoned his interest to the underwriters, who refused to accept the abandonment. In what manner the supercargo, being also one of the owners, might be affected by the purchase, it is unnecessary to determine. The question is, whether the plaintiff ratified his acts subsequent to the abandonment, and recognized the purchase as his own. In the case of Saidler and, Craig v. Church, (July term, 1799,) after an abandonment, a similar purchase was made, and the assured adopted it as their own, by availing themsel-ves of the advantage it offered, and fitting out and sending the vessel on another voyage for their own account. Under these circumstances, we considered the assured as having affirmed the purchase, and waived the abandonment.
The present case differs in this, that the plaintiff has done no act to affirm the purchase. He has not appropriated the vessel to his own use, and has not attempted to derive any benefit from the purchase. The vessel was sold at auction on her arrival at Hew York, and purchased by a stranger. Although it be not expressly stated in the case, the sale must be presumed to have been made for the benefit of the underwriters. It is objected that the plaintiff ought again to have offered to deliver them the vessel, or have consulted them as to the propriety of the sale. I think this was not strictly necessary. The abandonment was an offer to cede all his title and the possession of the vessel, as far as under the circumstances it was capable of being delivered. The plaintiff was not bound to do more and it being a case proper for an abandonment, the defendant ought to have accepted it; or, at least, the refusal was at his peril. He *384 did not accept, and the plaintiff was necessarily [*304] *left to act ás his trustee in the disposition of the property. If he executed the trust fairly, he has discharged his duty, and it was not incumbent on him tb follow the defendant, and repeat his application to receive what he ought at first to have accepted.(a) The sale at auction was, therefore, justifiable, and the defendant ought to be charged with a total loss, deducting the proceeds of the sale, and the value of the freight from St. Christophers to Hew York.
Judgment for the plaintiff for a total loss

 Whenever the injuries to the vessel within the perils of the policy, are such as to disable her from proceeding on the voyage, it is a total loss of all the subjects of insurance, if other vessels cannot' be procured to take the cargo. Manning v. Newnham, 2 Campb. 624. But a loss of the voyage as to the cargo is not a loss of the voyage as to the ship; if¡ therefore, on such an event, she be able or at liberty to perform her voyage, the assured on the ship cannot abandon and claim as for a total loss. Goold v. Shaw, 1 Johns. Cases, 293; Alexander v. Baltimore Insurance Company, 4 Cranch, 370, Hurtin v. Phœnix Insurance Company, 2 Marsh, by Condy, 601. a.

 After an unexcepted but effective abandonment the assured are qua» agents, or trustees, for the assurer, and the assurer, as to the subject of insurance, takes, or stands, in the place of the assured. Prom these two principles it necessarily follows, 1st. That those who were the agents of the assured become the agents of the underwriter, and that their acts as well as those of the underwriter, will, if bona fide done for the benefit of all concerned, be obligatory on the insurer as his acts, aid, therefore, cannot prejudice the rights of the insured: 2d. That the insured cannot claim from the insurer as for a. loss of that to which they were not themselves entitled. It results, from these deductions, 1st. That correspondents, consignees, supercargoes, and captains of the assured, are agents of the underwriter. Therefore, if the insured sell, even in the port of departure, the subject underwritten, without a view to his own benefit, it will not prejudice his claim for . a total loss. Walden v. Phœnix Insurance Company, 5 Johns. Rep. 310. Nor will going, after a loss within the policy from blockade, to a neighboring or other port, and a delivering there to the consignee of the insured, the goods underwritten. Schmidt v. United Insurance Company, 1 Johns. Rep. 249. 2d. That on an insurance on freight, though the goods to be carried be so damaged as not to be worth the transport, yet if the underwritten dc not entitle himself to it by an offer to take them on, he cannot recover from the insurer. Griswold v. New York Insurance Company, 3 Johns. Rep. 321. Nor will the acts of the insurer in saving of the cargo, and being present at *383 its unlading and delivery, amount to an acceptance of the abandonment. Ib. lb. What shall be tantamount is a matter for jury determination. BeU v. Smith, 2 Johns. Bep. 98. After an accepted abandonment, all transfers and investments of the property are for the benefit of the insurer; who may maintain trover for the articles purchased with it. Robinson and Hartshorne v. United Insurance Company, 2 Caines’ Rep 280, affi"med in error, 1 Johns. Rep. 592.

 Where the loss was total at the time of abandonment, on a subsequent arrival, tender and refusal, holding the property 60 days, selling it and giving credit to the underwriter for the proceeds, said to be no obstacle to recovery Invingston v. Hastie and Patrick, January, 1803. But see, as to this poini^ Church v. Bedient and others, 1 Caines’. Cases in Error, 21, 42, 43,