*IN ERROR.*
.....
ALBANY,
April, 1814.

OGDEN
v.
FIREM. INS. CO.

WILLIAM OGDEN and JOHN R. MURRAY, *Plaintiffs in error,*

*against*

### THE NEW-YORK FIREMEN INSURANCE COMPANY,
*Defendants in error.*

THIS cause came before this court on a writ of error from the *supreme court.* For the facts and judgment of the court below, see S. C. vol. 10. pp. 177—180.

The cause was argued by *Colden* and *T. A. Emmet*, for the plaintiffs in error; and by *S. Jones*, jun. and *D. B. Ogden*, for the defendants in error.

*Arguments for the plaintiffs in error.* As to the right to abandon in this case, there can be no question.* The only point in controversy is, whether the sale and purchase in this case was a waiver of the abandonment. If another person, other than the plaintiffs, had purchased, though for the benefit of the insured, it is not contended that it would amount to a waiver of the abandonment. The declaration of war does not destroy the contract, but puts an end to the voyage, so as to entitle the insured to recover for a total loss. The war intervened after the abandonment, which was not accepted by the insurers, as it ought to have been. All the difficulties which arose afterwards, were the consequence of the improper conduct of the insurers.

We deny that the abandonment, in this case, *vested* the property in the insurers, so that the insured had no right to interfere with it. The insured has a right to sell the property, after an abandonment, which the insurer has refused or neglected to accept, and to pay the loss.†

If the insured has no *lien* after a rightful abandonment, yet he has the *legal possession*, and has a right to sell and keep the proceeds, in part payment of the loss. If the insurers refuse to accept the abandonment, and pay the loss, the insured may refuse to give up the property, until paid. It is, *qua* a mort-

A detention of a vessel, by an *embargo*, is a justifiable cause of abandonment, on a policy of insurance. After an abandonment for a total loss, though not accepted, the insured cannot purchase the property, at a sale, without its being a waiver of the abandonment; though he has given notice to the insurer of the time and place of sale. See S. C. vol. 10. p. 177.
* 5 *Johns. Rep.* 299. 310. *Marsh on Ins.* 508. *Park on Ins.* 109.

† *Abbot v. Broome,* 1 *Caines' Rep.* 295. *Hamilton, arguendo. Walden v. Phœnix Ins. C* 5 *Johns. Re* 310.

*IN ERROR.*
•••••
ALBANY,
April, 1814.

OGDEN
v.
FIREM. INS. CO.
\* 1 *Johns. Rep.*
592.

gage; and the insured is not bound to look to the insurers for more than the residue remaining unpaid, after the sale.

The insured cannot be properly considered as a trustee; but is rather a *mortgagee*, with the additional circumstance, that the conduct of the insurer has forced him into that situation. In *Robinson & Hartshorne* v. *United Insurance Company*,\* it is true, the insured were *trustees*, and plainly, because the assurers had *accepted* the abandonment, and *paid* the loss; and during the time the insurer has to make his acceptance, or to refuse the offer of abandonment, the insured is a trustee. But where an abandonment has been rightfully made, and wrongfully refused, and the property is left in the hands of the insured, he is not, in that case, a *trustee.* The law will not impose on him, against his will, so responsible a character as that of *trustee.* If it be said that the insurers have not had their interest duly promoted, we answer, that if they had done their duty, they would have accepted the abandonment, and taken care of the property themselves. In all the cases which may be cited, it will be found, either that there has not been time for the insurer to accept, or there has been a refusal of the abandonment.

In this case, the plaintiffs ought to be placed in the condition of a mortgagee, or, rather, in a better situation, because the situation has been forced upon them, against their wish or consent, by the insurers. It would be very inequitable, to allow the insurer to derive a privilege or advantage from his own misconduct, and to throw a disability or disadvantage on the insured, against his will, and in consequence of his acting *ex necessitate.*

But even if the insured is considered a trustee, it cannot vary the case. Notice was given to the insurers, that it was necessary, for the interest of all parties concerned, to sell. This was sufficient to put them on their guard, and they should have seen whether the trustee was acting for their interest, or have given him instructions. As they did not see fit to say any thing on the subject, the trustee had a right to purchase. A mortgagee may sell, and yet become a purchaser. If the insured had a right to buy, he certainly had a right to use and employ the vessel. It is true, the insured could not prosecute the original voyage, or the one insured, on their own account. They did

not attempt this, but sent the vessel on a new and different voyage.

The case of *Abbot* v. *Broome*,* is not analogous to the one before the court, for here was a notice of sale, and it was clearly for the interest of the insurers, that *Murray* attended the sale, and bought in the vessel. If he had not done so, she would have sold for a less price, and the loss of the insurers have been much greater. It may be said, perhaps, that the insured, in attending the sale, was actuated more by a view to his own interest than that of the insurers; but the notice given by him to the insurers was sufficient to counteract any such intention; for the insurers might have sent an agent to attend and bid, so as to compel the insured to purchase at the highest price. The case of *Abbot* v. *Sebor*,† is contrary to that of *Abbot* v. *Broome*, though the circumstances are the same. There was an employment of the vessel by the insured, after the purchase, in both cases, and such also was the case of *Saidler & Craig* v. *Church*.‡

Again, if a trustee wishes to purchase the property of the *cestuy que trust*, equity will discharge him from his trusteeship, so far as to enable him to do so; but, in a case like the present, equity could not relieve; nor does law or equity ever recognise a party standing in such a situation, by necessity, as a trustee.

Even if the doctrine of trusteeship were applicable, it would only enable the insurers to consider the property as purchased for them, if he preferred to do so; and, in the present case, they have not chosen so to consider it, which clearly shows that the property has not been sacrificed, as is pretended. This doctrine of trusteeship does not make a repurchase a waiver of abandonment. The doctrine that a repurchase is a waiver of an abandonment, stands on different principles.

It may be comprehended in two positions; 1. Whenever, before an abandonment is made, a technical total loss exists, the insured voluntarily does an act which enables him, at a loss less than half the value, to pursue the voyage insured, this voluntary act turns the previous technical total loss into a partial loss, and destroys the right of abandonment.*

2. Whenever, after an abandonment has been rightfully made, on an existing technical total loss, the insured does a voluntary act which removes the technical total loss, and enables the pre-

*Margin notes:*

IN ERROR.
.....
ALBANY,
April, 1814.

OGDEN
v.
FIREM. INS. CO.
* 2 *Caines' Cas.*
268.

† 3 *Johns. Ca.*
29.

‡ 1 *Caines' Rep.*
297. in note.

* *Marsh. on Ins.*
581. 1 *Esp.*
*Rep.* 237. 3
*Mass. Rep.* 37.
*Marsh. on Ins.*
(ed. by *Condy*,)
582. 2 *Mass.*
*Rep.* 565.

*IN ERROR.*

.....

ALBANY,
April, 1814.

OGDEN
v.
FIREM. INS. Co.

perty insured to proceed on the voyage insured, such voluntary act shall be a waiver of the abandonment.

Where the act is done by the captain, supercargo, or agent, and it is afterwards ratified or adopted by the insured, it must be deemed, in its legal operation, as if done by the insured himself, at the time it was, in fact, done by such agent. And the case of *Saidler & Craig* v. *Church* would have fallen under the *first* position, if it had occurred after the decision of the court of errors, in *Church* v. *Bedient* ;* but it was, at that time, held that an abandonment made in ignorance of the total loss having ceased, was valid.† But, considering the abandonment as rightfully made, the case of *Saidler & Craig* v. *Church*, and that of *Abbot* v. *Sebor*, if it be law, must be classed under the *second* position.

*1 Caines' Cases, 21. (in 1804.)

† 1 Johns. Cases, 147. 154. (in 1799.)

From these two positions, and principally from the second, may be deduced this *corollary*:

3. Where, on a technical total loss an abandonment has been duly made, no rightful act of the insured, which does not do away the technical total loss, and enable the property to proceed on the voyage insured, shall be construed as a waiver of the abandonment. And this corollary is entirely applicable to, and ought to govern, the decision of the case now before the court. These positions secure to the insured an indemnity, and no more.

*Arguments for the defendants in error.* The decision of the court below was founded on clear and well-settled principles of law. An act of abandonment transfers the whole property to the insurer, and gives him the possession, and as complete control of it, as if there had been a regular bill of sale and delivery, and the insured have nothing more to do with the property. His remedy is on his special contract, and, if well advised, he will not intermeddle with what he has once renounced and abandoned. He agrees, by the policy, that if he takes any step in regard to the property abandoned, that he will act as agent of the insurer. Any intermeddling, therefore, with the property, after an abandonment, is in contradiction to the act of abandonment, and a waiver of it. It is only in consequence of the absolute renunciation of all right, possession, and use of the property, that the insured are entitled to recover for a total loss; and whenever the insured has subsequently intermeddled

with or used the property, and there has been a recovery for a total loss, there has been an assent or acquiescence on the part of the insurer.*

There is no such repugnancy or contradiction between the cases of *Abbot* v. *Broome* and *Abbot* v. *Sebor* as has been suggested. In the one case there was an affirmance of the acts of the assured by the assurer, and in the other there was not, but the contrary. The right of the insurer to affirm the acts of the insured or his agents abroad, is settled in the case of *Robertson & Hartshorne* v. *The United Insurance Company*, which case accords with the principles for which we contend.

The insured, by the present case, have exercised the highest act of ownership over the property, by a sale of it. The case of *Walden* v. *The Phœnix Insurance Company*,† decides that the insured cannot buy the property. The principles of the law of insurance are well settled, that in all cases of abandonment, the assured and their agents, captain, supercargo, &c. thenceforward, *ex necessitate*, become the agents of the insurer; they act *quasi* his agents, of course, without further ceremony; and this, even where the abandonment takes place at a port where both parties and all their agents reside and are present. If, however, the insured or his agent do an act beyond what the *necessity* of the case requires, such act may be affirmed or not, by the insurer. If the insured buys in the property, the insurer may sanction the purchase, and the abandonment remain good, and the insured must account to the insurer as his *principal*, but if he does not assent or affirm the purchase, the abandonment is waived and annulled.

Considering the insured as trustees, the case of the respondents becomes still stronger. A *cestuy que trust* can never be devested of his property, unless under a sale by his own directions, under a judgment of law; or unless made to a stranger without notice. It is to be observed that the ship's papers remained in the names of the appellants, after the sale, precisely the same as they were before the abandonment. The appellants clearly exceeded their powers as agents or trustees; and having acted for themselves, as owners, they must be considered as waiving the abandonment.

It is a settled rule in equity that a trustee shall never purchase trust property, unless he has some interest therein, as well

IN ERROR.

ALBANY,
April, 1814.

OGDEN
v.
FIREM. INS. CO.
*3 Johns. Cases,
39. 1 Johns.
Rep. 613.

†5 Johns. Rep.
310.

IN ERROR.

ALBANY,
April, 1814.

OGDEN
v.
FIREM. INS. CO.
* Munro v. Al-
hire. 2 Caines'
Cases,183—191.
per Benson, J.
8 Ves. jun. 345,
346.   13 Ves.
jun.    600.   2
Bro. Ch. Cas.
400. 9 Ves.jun.
217.

as the *cestuy que trust*, or purchases of and from the *cestuy que trust*.* This doctrine applies with great force to cases of insurance. Bystanders will seldom bid at sales of property in that situation, where they see the original owner is himself bidding, with a view, as they may suppose, to save something from the wreck. The assent of the *cestuy que trust* ought to be understandingly given, otherwise the purchase by the trustee is void. The *cestuy que trust* may, if he chooses, affirm the purchase, and the cases cited on the other side are those in which the purchases were so affirmed. The rights of the insurer can never be affected by any acts of the insured, without his consent; it is the *purchase* by a trustee, not the sale, that is forbidden by law.

The subsequent employment of the vessel shows in what character the appellants acted, and whether they purchased as the agents and trustees of the respondents. For they must have acted without any instructions from the respondents, and, indeed, without their knowledge.

The notice given to the respondents cannot affect the decision of this cause. They had every reason to suppose, from that notice, that the sale would be regular, and according to the rules of law; and, therefore, that the insured could not buy in the property. The insurers, it is true, might have attended the sale, but their omission to do so cannot prejudice their rights, or vary their situation. The case of a *mortgagee* is different from that of a *trustee*. The mortgagee does not sell the property. It is a *judicial* sale, or sale by operation of law. Besides, the mortgagee is a party in *interest*. The case, therefore, of a mortgagee, is not analogous to the present.

The case of *Storer* v. *Gray*,† in the supreme court of *Massachusetts*, was overruled in that of *Oliver* v. *Newburyport Marine Insurance Company*,‡ and in which they sanction the principles laid down in *Abbot* v. *Broome*, *Saidler & Craig* v. *Church*, and *Robertson & Hartshorne* v. *The United Insurance Company*.

LEWIS, RADCLIFF, and SANFORD, Senators, expressed themselves to be entirely satisfied with the decision of the supreme court; that it was founded on sound and just principles; and that, assenting to the judgment and the reasons given by the court below, they did not think it necessary to state their rea-

† 2 Mass. Rep.
565.

‡ 3 Mass. Rep.
37.

sons at length, but contented themselves with declaring their opinion, that the judgment of the supreme court ought to be affirmed.

This being the *unanimous* opinion of the court,[*] it was, therefore, ORDERED and ADJUDGED, that the judgment of the supreme court be, in all things, affirmed, &c.

<p style="text-align:center">Judgment affirmed.</p>