## Case No. 2,711.
### CHURCH v. MARINE INS. CO.
[1 Mason, 341.] [1]

Circuit Court, D. Rhode Island. Nov., 1817.

MARINE INSURANCE—TOTAL LOSS.

Where a vessel was stranded, and afterwards, before abandonment, was gotten off without material injury, but was, in the intermediate time, sold by the master at public auction, and purchased by him, it was *held*, that the plaintiff was not entitled to recover for a total loss.

[Cited in Barker v. Marine Ins. Co., Case No. 992; The Tilton, Id. 14,054; Michoud v. Girod, 4 How. (45 U. S.) 556; Veazie v. Williams, 8 How. (49 U. S.) 152; Allan v. Gillet, 21 Fed. 275; The Gulf Stream, 58 Fed. 606.]

At law. Assumpsit on a policy of insurance on the schooner Topaz for three months, the risk to be continued at the same rate, if, at the time, she shall not have arrived at Providence. The loss was alleged to be by perils of the sea and stranding. Plea, the general issue. At the trial it appeared that the policy was underwritten on the 2d of April, 1816. On the 12th of the same month the vessel was stranded on a bar, called New River bar, about thirty miles below Wilmington, in North Carolina. The master and crew abandoned the vessel soon after the stranding, and returned the next day and got on shore her sails, rigging, &c.; and on the 20th of the same month the hull, as it lay, and the sails and rigging, were, under the direction of the master, who was also a part owner, sold at public auction. The whole was bought by one Kendrick, who was a shipper on board of the schooner; and on the same day he conveyed all his right and title to the master, who immediately took measures to get the schooner off, and on the 23d of the same month, by the assistance of favorable winds and tides, effected his purpose. On the 29th of the same month, the plaintiff, who was a part owner, having received information of the disaster, abandoned to the defendants for a total loss. The schooner received very little damage from the stranding, and was soon repaired, and made a voyage with a cargo to Philadelphia, and from thence safely arrived at Providence. The master certified, that at the time of the stranding he was in prosecution of his voyage under a charter-party with Kendrick, by which he engaged to perform a voyage from New York to New River inlet, there to take a cargo of lumber for Wilmington, and perform three trips backwards and forwards, and then return to New York. And that, in consequence of the stranding, the subsequent part of the adventure was entirely abandoned by the parties to the charter-party. No charter-party was produced. There were some other circumstances, on which the defendant relied to establish his first

[1] [Reported by William P. Mason, Esq.]

point of defence, but which it is unnecessary to state in detail.

Mr. Searle, for plaintiff, contended that, under these circumstances, the plaintiff was entitled to recover for a total loss; and he cited and relied on the case of Sawyer v. Maine Fire & Marine Ins. Co., 12 Mass. 291.

Mr. Hazard, for defendant, contended: 1. That the loss was occasioned by fraud or gross negligence. 2. That the loss, if bona fide, was, by the subsequent events, a partial loss only, and that the plaintiff was not entitled to recover upon the abandonment, as for a total loss.

STORY, Circuit Justice. The question of fraud or gross negligence is a question of fact, which I shall leave to the jury, with proper directions as to the evidence. But as to the other point, I am decidedly of opinion, that there is no color to claim for a total loss. The vessel was stranded, and it is true, that if the abandonment had been made, while she remained in that state, the plaintiff might have been entitled to claim as for a total loss. But here the vessel was actually gotten off, without having sustained any essential injury, before the abandonment was made. It is argued, however, that the voyage under the charter-party was defeated, and a loss of the voyage is a good cause of abandonment. But how was the voyage defeated? Certainly not by the incapacity of the vessel to perform it, in consequence of any perils insured against; for she sustained very little damage, and was soon repaired, and capable of performing the chartered voyage. The voyage then was voluntarily abandoned by the parties, as not worth pursuing. But this, in respect to the underwriters, is no cause of abandonment, if the ship was capable of performing it. They engage, that the ship, notwithstanding any of the perils insured against, shall be capable of performing the voyage, not that she shall actually perform it. A loss of the voyage, as to the cargo, is not a loss of the voyage as to the ship. This is the doctrine of the supreme court (Alexander v. Baltimore Ins. Co., 4 Cranch [8 U. S.] 371); and, of course, is of conclusive authority in this court, even if I entertained (which I certainly do not) any doubts of its correctness.

The doctrine, too, is equally well recognised in England. Everth v. Smith, 2 Maule & S. 278; Falkner v. Ritchie, Id. 290; Cazalet v. St. Barbe, 1 Term R. 191; Parsons v. Scott, 2 Taunt. 363. The most, that can be said in this case, is, that the voyage was retarded by the accident. But the mere retardation of a voyage, is no ground for an abandonment as for a total loss. Anderson v. Wallis, 2 Maule & S. 240; Pole v. Fitzgerald, Willes, 641; Everth v. Smith, 2 Maule & S. 278; Falkner v. Ritchie, Id. 290. Besides; this is an insurance on time; and it does not insure any specific voyage, much less does it undertake to guaranty the performance of the voyage in the charter-party.

But it is argued, that the vessel was sold by the master while stranded; and that the ownership, once destroyed, never can return to the plaintiff, unless he elects again to become owner; and that, as the plaintiff has never made such election, the loss, as to him, continues total. And this case is assimilated to the case of a purchase by the master under a judicial sale. Assuming that the purchase of a ship, under a judicial sale, can be legally made by the master on his own account, and not solely for the benefit of his owners (on which I give no opinion); and assuming also, that the owners in such case may recover as for a total loss (on which also, until better instructed, I reserve giving any opinion); it is sufficient to say, that the present is not such a case. Marsh. Ins. bk. 1, c. 13, § 1, p. 581; McMasters v. Shoolbred, 1 Esp. 237; Story v. Strettell, 1 Dall. [1 U. S.] 10; Storer v. Gray, 2 Mass. 565; Oliver v. Newburyport Ins. Co., 3 Mass. 37; Sawyer v. Maine Ins. Co., 12 Mass. 291; Queen v. Union Ins. Co., Cond. Marsh. Ins. 582b, note; Abbott v. Broome, 1 Caines, 292; United Ins. Co. v. Robinson, 2 Caines, 280, 1 Johns. 592; Abbot v. Sebor, 3 Johns. Cas. 39; Walden v. Phoenix Ins. Co., 5 Johns. 310; Ogden v. New York Firemen Ins. Co., 10 Johns. 177, 12 Johns. 25; Havelock v. Rockwood, 8 Term R. 268. The sale, in this case, was made by the master, or under his immediate direction; and nothing can be clearer than that, at such a sale, he could not become a purchaser. He cannot be at once vendor and vendee. The sale was either merely an amicable sale, and the whole property bought in on account of the master; or it was a bona fide sale, which the purchaser declined to enforce, and released all his right acquired by the sale to the master. In either view, it is a void or ineffectual sale. Nothing can be better settled, than that an agent or trustee cannot, directly or indirectly, become the purchaser of the trust property, which is confided to his care. The law will not suffer any man to earn a profit, or expose him to the temptation of a dereliction of his duty, by allowing him to act at the same time in the double capacity of agent and purchaser, either at a public or private sale. This case then stands before the court, as if there was no sale; the ownership has never been legally devested, and the ship was, at the time of the abandonment, in good safety. There is no foundation, upon which to rest the claim for a total loss. Verdict for the plaintiff for a partial loss.