## Case No. 992.

### BARKER v. MARINE INS. CO.

[2 Mason, 369.] [1]

(Circuit Court, D. Rhode Island. Nov. Term, 1821.

MARINE INSURANCE—SHIPPING—SALES—PURCHASE BY AGENT OF SELLER.

1. A master of a ship who sells a cargo at public auction, after an abandonment to the underwriters, and buys it in at the sale to prevent a loss, does not become owner of the property thereby, so as to acquire thereby an insurable interest.

2. A master of a ship cannot become a purchaser at a sale of the property, which is sold by his authority as agent of the owners.

[Cited in The Tilton, Case No. 14,054.]
[See Glover v. Ames, 8 Fed. 351.]
[See note at end of case.]

3. If property is put up at auction by a master of a ship as agent of his owners, and bid in by him to prevent a loss, it is in contemplation of law no sale of the property.

At law. Assumpsit [by James Barker against Marine Insurance Company] on a

[1] [Reported by William P. Mason, Esq.]
2 FED. CAS.—52

policy of insurance dated the 2d of June, 1821, whereby "Robinson Potter for account of James Barker, or Robinson Potter, or both, made assurance," &c. "lost or not lost, arrived or not arrived, 4000 dollars, at and from Bristol in England, to a port of discharge in the United States, on cargo on board the brig Tom Hazard." The loss alleged was a total loss by the perils of the sea, in foundering at sea. Upon the trial of the case upon the general issue, the following facts were admitted or proved. The ship Aristomenes and cargo, belonging 3-4 to Robinson Potter, and 1-4 to Robert Robinson, and commanded by the plaintiff, early in the year 1820, sailed on a voyage from Newport to New-Orleans, where she unloaded her cargo and took on board another cargo for Greenock in Scotland, and there she safely delivered this cargo, and sailed from thence to Stockholm with another cargo, and after delivery of it took on board a cargo of iron for account of the owners, and sailed from thence for the United States. In the course of the homeward voyage the ship met with heavy disasters, and in consequence of distress was obliged to make a port of necessity, and put into Bristol in England, in October, 1820. She was there surveyed, and found so disabled and injured, as not to be worth repairing, and was accordingly condemned and sold for the benefit of the owners and all others concerned. The master set up the cargo of iron for sale at public auction, deeming this the best for all parties, but finding it could not be sold without a sacrifice, he bought it in to prevent a loss by the public sale; and afterwards in April, 1821, shipped it, part in the brig Tom Hazard, and part in another vessel, for the United States. The Tom Hazard foundered at sea on her voyage home, the other vessel arrived safe. The plaintiff wrote to his owners an account of all his proceedings; and they in December, 1820, abandoned to the underwriters on several policies, which had been underwritten on the Aristomenes and cargo; and the abandonments were accepted by the underwriters long before the present policy was underwritten; and they have received on account all the salvage from the Aristomenes and cargo. The iron shipped on board the Tom Hazard was consigned to Messrs. R. Potter and R. Robinson, (the owners of the Aristomenes and cargo) and expressed on the bill of lading to be 3-4ths for the former, and 1-4th for the latter. Upon these facts a verdict was taken for the plaintiff, subject to the opinion of the court upon the question, whether on the facts the plaintiff had an insurable interest. If not, then the verdict was to be amended, and entered for the defendants. [Verdict amended, and entered for defendants.]

Pitman & Webster, for plaintiff.
Hunter & Searle, for defendants.

STORY, Circuit Justice, (after stating facts.) The sole question in this case is,

whether the plaintiff has an insurable interest. It is contended, that the plaintiff has an insurable interest; 1. By virtue of his purchase at the sale at Bristol; 2. As trustee for the underwriters, and having a special interest in the safety, in consequence of his responsibility for the proper management of the property. I lay out of consideration, altogether, the question, whether there might not have been a valid insurance of this property for the underwriters, the abandonment having been accepted by them, and of course the property having vested in them, because this insurance purports only to cover the interest of the parties named in it; and is not made "for whom it may concern."

As to the first point, it appears to me, that the sale wrought no change whatsoever in the title of the property. It was a merely inoperative act, leaving the property exactly where it found it. It is impossible, that a person can at the same time be buyer and seller; and a person, who acts as agent in selling, cannot upon the known principles of law become a purchaser at the sale. This doctrine was acted upon by this court in the case of Church v. Marine Ins. Co., [Case No. 2,711,] and the cases there cited; and I see not the slightest reason to change the opinion then expressed. In truth, it is clear from the facts of this case, that the master did not contemplate this as a purchase on his own private account (which by the rules of law he would be prohibited from making); but as a purchase for the benefit of the owners. He bought in the property with the sole view of preventing a sacrifice of it, and a loss to the owners, whoever they might be. In so doing, he did nothing more than his duty; but it is a misnomer of the transaction to call it a sale; it was the prevention of a sale by the master. The property never passed from the owners; and the case stands exactly the same, as if the property had been bid in by the owners themselves.

Then setting aside all consideration of the sale, how does the case differ from the ordinary case of a master entrusted with the property of his owners. It will not be pretended, that a master ex officio is entitled to make insurance for his owners; and if he is not, I do not perceive, how the case is varied in respect to underwriters, becoming owners by an abandonment in the course of the voyage. It is true, that the master was intrusted with the care of this property for the owners, and was bound to take all reasonable measures to preserve it, and that is exactly his duty in all cases. But, strictly speaking, he has no interest in the property. He is a mere agent, or carrier. If the property is lost in the course of the voyage without his fault, it is the loss of the owners, and not his loss. He has not an insurable interest, because he may be responsible for negligence; for this insurance is not against a liability to actions, but against loss of prop-

erty. It purports to be an insurance on property; and here the property belonged to the underwriters, and not to the master. The case of a trustee entirely differs from this; a trustee has the legal title to the property in himself. He is the owner at law, whoever may be the cestui que trust beneficially interested.

Having said thus much on the case, the subject is, in my view of it, exhausted. Unless the court were prepared to say, that in all cases a master of a ship has an insurable interest, because he has the custody of it, it is impossible to sustain the plaintiff's claim. The verdict must therefore be amended, and a verdict entered for the defendants.

Judgment accordingly.

[NOTE. See Potter v. Marine Ins. Co., Case No. 11,332, apparently involving the same subject-matter, from which it appears that the owner recovered upon another policy.]