ROBERTSON ET AL. *vs.* WESTERN MARINE AND FIRE INSURANCE COMPANY.

EASTERN DIS.
*July*, 1841.

ROBERTSON
ET AL.
*vs.*
WESTERN
MARINE & FIRE
INSURANCE CO.

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

The master of a boat, whose cargo is materially damaged by one of the perils insured against, is not bound to wait a great length of time, at a heavy expense, to overhaul, repack and reship the cargo, when but little or nothing would be saved. He may exercise a sound discretion, and sell it in its damaged state, for the best price and benefit of all concerned.

The purchase of property, damaged by the perils insured against, by the owner, who has been insured, is illegal, and has the effect of revoking his abandonment, and turning the total into a partial loss, which is all that can be recovered.

After abandonment, the insured becomes the agent of the insurers, and standing in that relation, he cannot purchase, except with the consent of his principals. The master and owner both become agents of the underwriters, on abandonment.

Custom or usage in the country, of owners buying in their property, when sold as damaged, for account of the underwriters, cannot justify *that*, which by the law of insurance, has been held to be unlawful.

This is an action on a policy of insurance, to recover $3720, as the value of 62 hogsheads of tobacco, at $60 per hogshead, 58 of which the plaintiffs allege, they shipped at Greensburg, on Green River, in Kentucky, in the flatboat called the Lady Marshall, whereof James Saunders was master; the boat and cargo being consigned to Lambeth & Thompson, commission merchants in New Orleans. That said boat struck a rock in the river, by which it sunk, and the cargo was seriously damaged; that every possible care was taken of it, for the benefit of the underwriters, and to whom it was abandoned as a total loss. The other four hogsheads were in another boat, which shared a like fate with the above. The plaintiffs pray judgment for the entire amount, as for a total loss.

The defendants pleaded the general issue; they aver, that all the proceedings had in regard to the tobacco, are illegal; that the sale is a pretended and fraudulent one, and the plaintiffs have no cause of action.

Upon these issues the cause was tried; and with the evidence taken and offered on the trial, it was submitted to a jury,

EASTERN DIS.
July, 1841.
———
ROBERTSON
ET AL.
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.

who returned a verdict for the plaintiffs in the sum of $2800. From judgment confirming the verdict, the defendants appealed.

*Jones & Peyton*, for the plaintiffs and appellees.

*Maybin & Grymes*, for the appellants.

*Morphy, J.* delivered the opinion of the court.

This action is brought on an open policy of insurance, taken by Lambeth & Thompson, commission merchants of New Orleans, for whom it may concern. The plaintiffs seek to recover $3720, the value of fifty-eight hogsheads of tobacco, at the rate of $60 per hogshead. They allege, that on or about the 9th of January, 1838, they shipped this tobacco on board the flat-boat Lady Marshall, whereof James Saunders was master, from Greensburg, on Green River, in the State of Kentucky, to the address of the said Lambeth & Thompson, of this city ; that while said boat was descending Green River, on her way to the place of destination, and about one hundred and fifty miles below Greensburg, she was wrecked and sunk in consequence of running on a rock, notwithstanding the exertions of the master and crew to avoid the accident : that a total loss of said tobacco has thus occurred by one of the perils insured against, to wit : the dangers of the river ; and that they have made an abandonment to the company of such part of the tobacco as could be saved from the wreck. The underwriters rest their defence on two grounds, to wit : 1. That the sale of the damaged tobacco made by the master, was unnecessary and illegal. 2. That the abandonment in this case was waived, because the tobacco was purchased by the plaintiffs.

I. On the first ground of defence, it has not been, nor could it be denied, that in cases of necessity the master, upon whom the character of agent is in some manner forced, is authorized to sell for the benefit of all concerned ; but it is contended, that the circumstances of this case did not justify a sale, that the tobacco could have been dried, repacked and forwarded to New

Orleans by the master, as it has been subsequently by the purchasers. The evidence shows, that notwithstanding the exertions of the crew, and what additional hands could be procured, the tobacco remained several days under water; that some of the heads of the hogsheads were bursted out, and the tobacco saturated with water. The witnesses and appraisers agree, that the damage done to it exceeded fifty per cent. If another boat could have been procured on the spot, (of which there is no evidence,) it would have been contrary to the interest of the insurers, to reship the tobacco in its then damaged condition; for it would have become rotten and entirely worthless long before it reached New Orleans. But admitting, as defendants contend, that it could be considered the duty of the master to go through the tedious, expensive and uncertain process of opening, drying and reprizing the damaged tobacco, we are satisfied from the testimony, that it was impracticable for him to do it. There was on board upwards of eighty hogsheads of tobacco, and the master was bound to take care of the whole of it; numerous barns or shelters were necessary for the operation, and none were to be had on the bank of the river, nor could a sufficient number of hands be procured. Two months at least would have been required to prepare the tobacco for reshipment, and then from the uncertainty of the navigation of Green River, the cargo might have been detained several other months, waiting for a tide. The master declares, that he thought it more advisable to sell the tobacco, damaged as it was, because the expense would have been much more, to have fitted up and repaired the boat, and dried and repacked the tobacco, than it would have sold for in New Orleans. Two witnesses who express the opinion, that the tobacco could have been dried and reprized, admit, that the process would have been very expensive. It further appears, that the purchasers of the tobacco had to send it a distance of ten miles, and to procure a person of skill and experience, to attend to the drying and reprizing of it; that it required a number of barns and shelters, and a great number of hands, and that it was nearly

EASTERN DIS.
*July*, 1841.

ROBERTSON
ET AL.
*vs.*
WESTERN
MARINE & FIRE
INSURANCE CO.

The master of a boat whose cargo is materially damaged by one of the perils insured against, is not bound to wait a great length of time, at a heavy expense, to overhaul, repack and reship the cargo when but little or nothing would be saved. He may exercise a sound discretion, and sell it in its damaged state, for the best price and benefit of all concerned.

EASTERN DIS.
July, 1841.

ROBERTSON
ET AL.
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.

three months, before the tobacco was ready for reshipment. Under such circumstances, it appears to us, that the master was not bound to impose on himself and his crew these new and troublesome duties, and was justified in selling the damag ed cargo. Then being no longer near the place, the master consulted with one Barret, the clerk of the county court of the county, where the accident happened. Notices of the sale were stuck up in different public places during several days in three or four of the adjoining counties, and every thing appears to have been conducted with good faith and fairness on the part of the master. 2 Philips, 311, 328; 1 Douglass, 234; 12 Johnson, 107; 2 Sumner, 215.

The purchase of property, damaged by the perils insured against, by the owner, who has been insured, is illegal, and has the effect of revoking his abandonment, and turning the total into a partial loss, which is all that can be recovered.

II. On the second point, we are of opinion, that the purchase by the insured was illegal, and had the effect of revoking their abandonment; it turned the total into a partial loss. It is now well settled, that when the insured abandons and claims as for a total loss, if it becomes necessary to sell the subject of the insurance, he cannot purchase it on his own account, without waiving the abandonment. This rule is said to be founded in sound policy, to prevent fraudulent speculations upon a loss, at the expense of the insurer. It rests also on the broad and well known principle, that a trustee cannot become the purchaser of the estate of his *cestui que trust.*

After abandonment the insured becomes the agent of the insurers, and standing in that relation, he cannot purchase, except with the consent of his principals. The master and owner both become agents of the underwriters on abandonment.

After an abandonment, the insured becomes the agent of the insurers, and standing in that relation, he cannot purchase, except with the consent of his principals. If he does, and the purchase is not sanctioned by the insurers, the abandonment is waived and annulled. It has been remarked, that this doctrine applies with great force and reason to cases of insurance, By-standers will seldom bid at sales of property in that situation, where they see the original owner is himself bidding with a view, as they may suppose, to save something from the wreck. The underwriters being in most cases at a distance from the spot, where the loss happened, would be exposed to great impositions, if the rule were relaxed. 2 Caines, 280; 9 Pickering, 466; 3 Johnson 39; 5 Idem, 310; 10 Idem,

177; 12 Idem, 24; 1 Mason, 341; 2 Mason, 369; Philips, <span>EASTERN DIS- July, 1841.</span>
409, 410.

But it is urged, that these authorities do not apply to the <span>ROBERTSON ET AL.</span>
present case, in which all the· proceedings in relation to the <span>vs.</span>
<span>WESTERN</span>
sale were conducted from beginning to end by the master as <span>MARINE & FIRE INSURANCE CO.</span>
sole agent of the underwriters; that by the abandonment the
property was transferred to the insurers, and that from that
moment the master ceased to be the agent of plaintiffs, and be-
came theirs; from whence it is argued, that the insured are to
be considered as strangers; having nothing to do with the sale,
and competent to purchase like any other person. It is un-
doubtedly true, that the master or whoever has the charge of
the property, becomes instantly upon abandonment the agent
of the insurers; but this must be understood in cases, where
the owners are not themselves on the spot; for if they are,
they become the agents of the underwriters as well as the
master, and the latter will naturally consult with them, and be
g·id'ed by their advice and directions; especially when, as in
the present case, a regular abandonment has not yet been made.
A few days before the sale, the master, it is true, entered his
protest, in which he declared, that the sale or reshipment of
the tobacco would be made for the underwriters; but the notice
of the loss and of the intention to abandon was given to the
defendants only after the sale. Besides, the insured agrees by
the policy, that if he takes any step in regard to the property,
after an abandonment, he will act as the agent of the insurers
as well as his agents, captain, supercargo, &c. 2 Condy's
Marshall, 614. In most of the cases, in which a purchase by
the owners has been held to be a waiver of the abandonment, <span>Custom or usage in the</span>
it will be found, that the sale was made under the authority of <span>country, of owners buying</span>
the master. The record contains some evidence tending to <span>in their proper- ty, when sold as</span>
show, that it is the prevailing usage in that section of the coun- <span>damaged, for ac- count of the un-</span>
try, for the owners of damaged tobacco to buy it in at the sales <span>derwriters, can-</span>
made for the account of the underwriters. This usage, admit- <span>not justify that, which by the</span>
ting it to exist, cannot surely justify, in a legal point of view <span>law of insurance has been held to</span>
at least, that which by the settled law of insurance has been <span>be unlawful.</span>

EASTERN DIS. held to be unlawful. It is not besides, proved, to have been of
July, 1841. such long standing and general notoriety, as to authorize the
GOURJON, f. m.c. presumption, that the parties have contracted with reference to
vs.
HOLMES, ET AL. it. The plaintiffs can, in our opinion, recover only for the
partial damage sustained, which is proved to have been fifty
per cent., and the expenses for saving the tobacco, which
amounted to $170.

It is therefore ordered and decreed, that the judgment of the
Commercial Court be avoided and reversed, and proceeding to
give such judgment as, in our opinion, should have been ren-
dered below : It is ordered and decreed, that the plaintiffs do
recover of the defendants nineteen hundred and ten dollars,
with costs below, those of this appeal to be borne by the plain-
tiffs and appellees.