P. S. Wilcox and F. L. Hanks *v.* J. F. B. Marshall.

## SUPREME COURT—OCTOBER TERM, 1860.

### P. S. WILCOX AND F. L. HANKS *vs.* J. F. B. MARSHALL.

WHERE one of several part owners of the ship or ships, engaged in the whaling business, acts as agent to purchase supplies and outfits for the ships from third parties, he will not be permitted to take beyond a reasonable compensation for his services (or that agreed upon), nor to hold any profits incidentally obtained in the execution of his duty, even if sanctioned by usage.

Where said part owner had furnished the supplies for the said vessels from his own stock in trade at the lowest market rates, with the knowledge of and without objection by the other owner, the latter must be held in law to have waived his right to open up the accounts of said disbursements, they having been furnished him according to the usage of the business.

Where said part owner, acting for the others, furnished them, from time to time, with accounts of the disbursements, and charged interest on advances made by him in fitting out the vessels, without having first made a demand for contribution ; *Held*—That the furnishing of the accounts must be regarded as notice to the said part owners and equivalent to an express demand, rendering them liable for interest from the time the accounts were so furnished.

An agent or trustee can not become the purchaser of property confided to his care.   Such sale not absolutely void, but voidable by the *cestui que trust.*

A party can not ask for gains for which he has incurred no hazard and made no contribution.

Although agents are not legally entitled to any incidental profits, arising from the management of the business confided to them by their principals, yet, where it appeared they had exercised due diligence in making their contracts of freightments, and made the most advantageous bargain they could, their principals could not vacate their contracts or make them liable, if at some other period, before or after, a less rate of freight had attained.  And if put on board their own ships, the lowest rate of freight in the market only could be charged.

A claim for the individual services of one partner can not be joined with the amount due the firm for services rendered by the partnership itself.

By the Court :

This is an action of assumpsit brought by the plaintiffs, as surviving partners of the firm of R. Coady & Co., of Honolulu, to recover the sum of $320, and interest, which they allege to be due from the defendant in settlement of his account as a part owner in several whaling vessels, for which R. Coady & Co. were the agents or managing owners.

P. S. Wilcox and F. L. Hanks *v.* J. F. B. Marshall.

By consent of parties, the case has been heard by the Court, without the intervention of a jury, judgment to be entered at the convenience of the Court, as of the October term.

This is one of four actions of the same nature, brought by the plaintiffs against the defendant and others, and as the defense made in this case is, as we understand, the same as that in the others, the decision of the present case will probably control the settlement of the others.

The plaintiffs' demand is resisted, and the accounts as sued upon are objected to, on various grounds, the fundamental point of defense being that, in the business of supplying and fitting out the whaling vessels in question, and of disposing of the products of their voyages, Richard Coady, and afterwards Coady & Co., were the agents of the present defendant and the other part owners, and therefore not entitled to any profit or remuneration for their services about the business, beyond the commission of five per cent., usually allowed in Honolulu for such agencies.

It is necessary, therefore, that we should first consider the applicability to the present case, of certain legal principles relied upon on the part of the defendant, before we take up any of the specific points touching the merits.

It is argued that a party occupying a fiduciary relation, as an agent for others in regard to any particular business, has no right, in the transaction of that business, to make any extra profits for himself, or, under any circumstances, to take for his services anything more than the stipulated commission ; and that the position of an agent for the defendant, in a case like the present is incompatible with that of a merchant operating on his own account.

We have no doubt of the general soundness of these as legal propositions, or that they are of almost universal application ; but upon careful consideration, we have doubts as to their being in point as to some of the questions involved in the present case. Originally, Richard Coady, and then R. Coady & Co., were part owners, together with the present defendant and others, of several whaling vessels. The present plaintiffs, and R. Coady before them, acted as ships' husbands and agents for those vessels. They were not merely ships' husbands, as

that term is generally understood, for other men's ships, but they were the managing part owners, to whom was confided the whole management as to the fitting out and manning of the ships, as well as the disposition of the products of the whaling voyages prosecuted for the common interest. The powers and duties of a ship's husband in relation to ships engaged in ordinary trading or freighting voyages, as accurately described in the books, (see Story on agency, section 35; 1 Bell's Commentaries, 410, section 428,) full though they be, do not exactly cover the position held by the plaintiffs. From the fact that the whaling business, in which their vessels were engaged, was prosecuted from this port, to which a great part of the various materials necessary for the outfitting of the ships had first to be imported—and from which, upon the return of the vessels from the fishing grounds, almost all the products of the voyages had to be exported before they reached a market—the agency of the plaintiffs assumed a much more general character than that of mere ships' husbands. As the facts of the case appear to us, we do not think it was understood at any time that they should be regarded merely as such. True, it is in testimony, that when the business began, a chief inducement for the present defendant and others to embark their capital in it was, that Richard Coady, who was an active, shrewd business man, not at that time engaged himself as a merchant, would be able to fit out the vessels to the best advantage, by giving his personal attention to the matter, and purchasing supplies as cheaply as possible, receiving only the usual commission, so that their ships, to use the expressive language of the parties, should not have to commence their voyages "by sailing through a ship-chandler's store." The business was begun in that way, but after it had been prosecuted for some time, Mr. Coady stated to some of the parties interested that it would not pay him to carry on the fitting out of the vessels in that manner, and he commenced the ship-chandlery business himself, and also made arrangements for the importation of supplies on his own account, or that of the firm, with the view, no doubt, that he would be able to furnish such supplies for the use of the vessels, instead of continuing to purchase them here from other parties. It does not appear that any objection to this mode of proceeding was made at

the time by the other part owners, and, accordingly, the subsequent accounts of disbursements show that a large part of the supplies for the vessels were furnished by Coady, or Coady & Co. They were in the habit of watching the market, and buying up from time to time quantities of such articles as were likely to be required in re-fitting the vessels. And such a mode of proceeding is said to be usual at those ports in the United States from whence the whaling business is extensively prosecuted.

In attempting, then, to apply to this part of the case the legal principles which are generally applicable as between principal and agent, or to ships' husbands, we must have regard to the particular circumstances of the case, and the mode of dealing between the parties. Had it been clearly understood that Coady, or Coady & Co., were merely to act as agents to purchase from others the various supplies for the ships, as the necessity for supplies arose, thus establishing between them and the other part owners the relation of principal and agent, pure and simple, then they must have been subject to the well established rules, that a person cannot act as agent in buying for another goods belonging to himself ; and that no agent will be permitted to take beyond a reasonable compensation (or that agreed upon) for his services, or to hold any profits incidentally obtained in the execution of his duty, even if it be sanctioned by usage. (Story on Agency, Sections 9, 207 ; Massey *vs.* Davies, 2 Vesey, Jr., page 317 ; Church *vs.* Mar. Ins. Co., 1 Mason, 341.)

Counsel for plaintiffs admit the soundness of these rules, and it appears by the testimony and the accounts, that in those instances where they purchased from third parties supplies required by any of the vessels, they have charged no profit to themselves beyond the stipulated commission ; that when in any such instance they obtained a discount, they have allowed the advantage of that discount to accrue for the common interest ; and that where they furnished articles from their own stock on hand, they have charged no more than a reasonable price, or the lowest market value of such articles at the time.

Counsel for defendant have cited several cases referred to in the notes to Fox *vs.* Mackreth, 1 Leading cases in Equity, 200,

as sustaining the principles for which they contend, but which, upon examination, and for reasons already stated, we do not deem applicable to this part of the case. In the case of East India Company *vs.* Henchman, Lord Chancellor Thurlow held that when a factor, instead of charging factorage upon purchases made for his employers, buys up goods which he ought to furnish as factor, and deals with his constituents as a merchant, and charges mercantile profits, he may be compelled in equity to account. In the case of Bently *vs.* Craven, where one of several partners was employed to purchase goods for the firm, and he, unknown to his co-partners, purchased goods of his own at the market price, and made considerable profit thereby, it was held by Sir J. Romilly, M. R., that the transaction could not be sustained, and that he was accountable to the firm for the profit thus made. So, also, in the case of Massey *vs.* Davies, 2 Vesy, Jr., 317, an agent for a colliery, who it was stipulated was to have no emolument beyond his salary, was decreed by Sir R. Pepper Arden, M. R., to account for the profits made by selling to his principal timber belonging to himself and another person, with whom he had clandestinely entered into partnership, under the name of that person. The distinction which we draw between those cases and that branch of the present case which we are now discussing may, at first sight, seem to be a nice one, but we think it is clear. In the first place, in all those cases the relation between the parties was an unmixed, well defined relation to be governed by certain well understood principles ; and, again, there is apparent in those cases conduct on the part of the defendants contrary to their duty, and to what was expected of them by the other parties, and that too in a clandestine way. Here, the outfitting of the vessels by Coady and Coady & Co., whether with supplies purchased from third parties, or with articles furnished from their own stock in trade, was carried on openly and fairly, so that if either of the other part owners had any objections to make, he had the opportunity. It does not appear that any express objection was made by the defendant, when the vessels were being fitted out, nor when the several accounts of disbursements were furnished to him, according to the usage of the business ; and that fact, of itself, must now be held conclusive against him on this part of the case, as amounting in law to a waiver of all objections.

We must now advert to the other branch of the case, which relates more particularly to the agency of Coady, and Coady & Co., about the disposition of the products of the whaling voyages. It appears that they made certain arrangements, on their own account, with Messrs. Swift & Allen, of New Bedford, in pursuance of which the plaintiffs were to forward to Swift & Allen, for sale and returns, whatever oil and bone, belonging to the catchings of the several vessels, should be sent to the United States market. The plaintiffs also negotiated for and obtained from Swift & Allen, a credit to a large amount, against which they were at liberty to draw on certain conditions. It appears that the plaintiffs availed themselves of this credit, paying interest for advances at the rate of six per cent. per annum ; but they never drew on their correspondents against any particular shipment. For advances made here by the plaintiffs, on account of disbursements in the fitting out of the ships, they have charged interest against the several part-owners at the legal rate in this Kingdom, viz : twelve per cent. per annum. It is claimed, on behalf of the defendant, that the credit with Swift & Allen was obtained by the plaintiffs, through an express agreement that the products of the whaling voyages, which was the common property, should pass through Swift & Allen's hands, and that, therefore, the defendant and other part owners are entitled to share in any benefit or profit which may have accrued to the plaintiffs, by reason of that arrangement. But to this it is answered, as we think conclusively, that the facts of the case show that the arrangement for a credit with Swift & Allen, made by the plaintiffs, was made by them for the use of their business generally, solely on their own account and responsibility, and not as the agents of the other part-owners, who never authorized the plaintiffs to make any such arrangement on their behalf—never were responsible for the re-payment of any money so obtained, and cannot, therefore, claim to reap any advantage therefrom.

It is also claimed, on behalf of the defendant, that the plaintiffs have no right to charge interest on advances made by them in fitting out the vessels, without having first made a demand for contribution. But it appears in testimony, that the plaintiffs furnished the accounts of disbursements, from time to

time, to the defendant and other part-owners, as is usual in the business, and this must be regarded as notice to them, and equivalent to an express demand, rendering them liable for interest from the time the accounts were so furnished. It is still further claimed, on behalf of the defendant, that the plaintiffs cannot charge interest on those advances, after the products of the whaling, a large portion of which was the property of the defendant and the other owners, came to the plaintiffs' hands, because they might have raised funds, by drawing bills against that property, on Swift & Allen, who had agreed to accept. But in the absence of any proof of a special agreement between the parties, on this point, and in view of the fact that the credit with Swift & Allen was obtained by the plaintiffs for their own use, and on their sole responsibility, we think it was optional with them whether to draw thus or not. It is testified by Mr. Hanks that they never did draw against any particular shipment; that on account of advices received from Swift & Allen, Coady & Co. could not have drawn against any shipment made in the fall of 1858, and that whalers' bills were that season at a discount of seven or eight per cent. The defendant and the other part-owners are credited with interest at twelve per cent. on the nett proceeds, from the date when the account of sales was made up in New Bedford, and on the whole we regard the plaintiffs' account, in respect of interest, as just and reasonable.

It is contended, further, that the defendant is entitled to the profit which may have been derived from the charter of the vessels on which his oil was transported to market, to the extent of his own freight. It appears that the plaintiffs chartered several ships, jointly with others, in San Francisco, in the summer of 1858, for freighting purposes from Honolulu. The obligation to fulfill the terms of the charter parties was assumed exclusively by them. The defendant assumed no responsibility, and had no interest in them. Whatever the loss may have been must be borne by them, and whatever the gain should be enjoyed by them, unless they have sacrificed it by some principle of law and equity for not strictly conforming to the rules which should govern agents. An agent or trustee cannot become the purchaser of the property entrusted to his

care. This principle is well settled. I do not mean that the sale is absolutely void, but voidable, for the *cestui que trust*, and for all whom the trustee or agent acted, have an option to avoid the sale and retain the property sold, or confirm the sale and receive the consideration. (Jennison *vs.* Hopgood, 7 Pick., 1 ; Jennison *vs.* Hopgood, 10 Pick., 77 ; Church *vs.* Mar. Ins. Co., 1 Mason, 341 ; Barker *vs.* same, 2 Mason, 369 ; Exparte Kennett, 10 Vesey, 381 ; Shelton *vs.* Homer *et als.*, 5 Mich., 467 ; 5 Pick., 521.)

At the time the vessels were chartered, the whaleships were employed in the Northern seas ; of their safety and their success no man could tell. At length, however, the whaleships and freighting ships arrive, and the oil and bone are to be sent forward. The plaintiffs make a contract of affreightment by the ships in whose charter they are interested, for the transportation of the defendants' oil and bone, which occupies but a small portion of the capacity of either of the ships chartered. No objection is taken by the counsel to the rate of freight, for undoubtedly they would be entitled to the lowest in the market, as they were bound to exercise their utmost diligence to secure it. To this extent unquestionably the principles of equity would apply, that, if they employed ships in which they were interested, they could only charge the lowest rate of freight ; whereas, if they had exercised due diligence at the time in making their contracts of freightments, and made the most advantageous bargain they could, their principals could not vacate their contracts or make them liable, if there had been during the season a less rate of freight ; but when they put the freight on their own ships, the lowest rate can only be charged. The principle to which we have hitherto adverted is very sound : that a trustee should not be a seller and purchaser at the same time, because it would subject the *cestui qui trust*, to the liability of injury—neither should an agent, unless the contract is approved by the principal. In this case, the facts show that the charter of the vessels by the plaintiffs would tend to reduce freights, as this undoubtedly did. They took the freight at the lowest rate of freight—so far, then, the defendants were benefited, and upon equitable principles they ought to acquiesce in the rate of freight charged. I do not regard the facts of this

case as bringing it within the range of the principles before adverted to. Suppose, for example, that the plaintiffs had owned the ships, and had taken the oil on freight, would anything more be asked of them than to have the rate of freight reasonable and the lowest in the market? If the contrary principle obtains, how would the estimate be made? Should the account of the vessel be taken, and should she have paid for herself, then nothing would be due; but if she had been an incessant loss, then only the lowest rate of freight should be charged.

While seeking to extend the principle to the state of facts before us, would not great injustice arise? The defendant wanted his oil in the New Bedford market; the plaintiffs transport it in ships chartered by themselves and others—or, as may truly be said, which they owned for the time being—are they not entitled then to a fair consideration for doing it? and would it not be partaking of profits which the plaintiffs had honestly made by their business capacity, their credit and capital and labor, and at their own hazard? It appears to me that the defendant should not ask his proportion of gains, for which he has made no contribution. The defendant, or his agents, were resident in the city during the time all this business was transacted, and no objection was made, and if their freight was transported at the lowest market rate, and that a reasonable rate, I can see no reason or justice that the claim should not be allowed.

In case of a trustee, the reason is palpable that he should not purchase at his own price. It is very clear that the *cestui qui trust* should have the right to avoid the contract or confirm it; but in the case before us there is no such inequality, for the party is bound not only to a reasonable freight, but to the lowest in the market. I am not aware that any other principle has ever obtained in the commercial world, than that if agents ship by their own vessels property belonging to others, they should have pay at the lowest rate, if that was reasonable. In this case it is not denied that the rate was reasonable, and at the lowest rate in the market.

A charge occurs in one of the accounts of $70 94, said to have been brought from the books of R. Coady, and to have been incurred as premium paid by Coady for money raised by him to make advances. There is no evidence that the defendant agreed

to the transaction, or that he was called upon to contribute before Coady resorted to other means of raising money for advances, nor of any usage that can bind the defendant, and he is therefore not liable for premium so paid.

It appears, also, that in the account of credits given to the common adventure, there is a sum of $500 short credited in the proceeds of certain articles or materials sold from the bark " Italy." It was explained at the trial, by the last named plaintiff, Hanks, who made out the accounts, that he had performed a great amount of extra services in relation to the bark " Italy," 'for which he considered himself entitled to be paid, and that instead of debiting the owners directly with the amount, he had short credited them in the proceeds of sales in the sum of $500, for the same object. It is not argued, nor do we believe, that Mr. Hanks intended to commit a wrong by adopting this mode of getting paid. He believes himself honestly entitled to that sum, and he ought, therefore, to have claimed it from the owners openly. It appears that in conversation with one of the parties interested, who was cognizant of his extra services, that party acknowledged his right to be paid. But the claim, as it comes before us in this indirect way, is made by the surviving partners of the firm of R. Coady & Co., and not by Mr. Hanks individually. If the defendant owes anything to him as an individual, he must claim it in that capacity ; it cannot be recovered in an action which is between other parties ; for if the defendant had a matter of set-off pleadable against the separate demand of Mr. Hanks, he could not plead it in this action. Further, there is no charge made for those extra services in the accounts rendered to the defendant, and put in at the trial ; and, therefore, if the sum were claimed as due to the firm of Coady & Co., it could not be recovered in this action. The plaintiffs are bound by the accounts as sued upon, and these show a short credit, for his share of which the defendant must have allowance, in ascertaining the amount to be recovered.

The accounts will be referred to the master, to ascertain and report the amount due to the plaintiffs, or the defendant, upon the basis of this decision, with authority to require from either of the parties any further information that may be necessary

for that purpose ; and, upon the coming in of his report, and its approval, the Court will hear a motion for judgment.

ROBERTSON, JUSTICE.

I concur in the decision of the Court in this case, except upon one point : that is, in relation to the freighting of the defendant's oil and bone to New Bedford. Upon that point, I respectfully dissent from the opinion of my brethren, for the following reasons :

Firstly—Because the agency of Coady, and Coady & Co., and their duty in relation to that subject, were entirely distinct from their agency in fitting out the vessels, as ships's husbands.

Secondly—Because Coady, and Coady & Co., undertook this agency for a stipulated commission of five per cent.; but it appears by the evidence, that in the transaction of such agency, they made a considerable incidental profit, which the plaintiffs now seek to retain, or to recover, in addition to the stipulated commission. In my opinion, the plaintiffs are not legally entitled to retain, or to recover that incidental profit from the defendant, in the absence of express proof that he consented to deal with Coady, and Coady & Co., as principal freighters, so as to discharge them from their relations and obligations to him, as simple agents for hire. I know of no case in the books, in which it has been held that freight-brokers, factors, or other like agents, can recover for their services any profit made by them in the transaction of their agency, besides their commissions and expenses ; nor can I perceive that the cases cited by the Court have any bearing upon this point ; and I consider the doctrine adhered to in the cases of East India Company *vs.* Henchman, Bentley *vs.* Craven, and Massey *vs.* Davies, as clearly applicable to this part of the present case.

C. C. Harris, for plaintiffs.

J. W. Austin, for defendant.