FOURNET, Justice.
 

 ' This is a summary proceeding instituted by the State of Louisiana, under the provisions of Act No. 14 of the Second Extra Session of the State of Louisiana for the year 1935, to recover from the Standard Oil Company of Louisiana the sum of
 
 $142,915.02
 
 for additional severance taxes on oil, which the State claims is due- for alleged arbitrary deductions made by the defendant in its payment of severance taxes on oil produced and purchased by it in the State of Louisiana from August 1, 1928, to and including December 31, 1936j and for interest, penalties, and attorney’s fees.
 

 The defendant, in response to the rule nisi, and in conformity to the provisions of the act under which the State instituted this suit, filed all its pleadings at the same time, before the hour fixed for the return date, consisting of three motions to dismiss the suit, a plea of estoppel, a plea of prescription, a motion for a continuance, and an answer.
 

 Briefly stated, the pleadings set up: (1)' That Act No. 14 of the Second Extra Session of 1935 does not apply to the collection of severance taxes, but, if it does, it is unconstitutional for the reason that the act deprives the defendant of its property without due process of law and is in violation of the equal protection clause's :of the Constitutions of the State of Louisiana and of the United States, Const.La.1921, art. 1, § 6, Const.U.S.Amend. 14, § 1, and moreover, the procedure under the act is an encroachment by the Legislative Department upon the Judicial Department of this State-in violation of sections 1, 2, and 10 of article 7 of the Constitution of Louisiana of 1921, and the court is, therefore, without jurisdiction to proceed thereunder; (2) that,'if"Act No. 14 is constitutional, the State cannot proceed under the act but, as the object is to collect severance taxes, it must proceed under the severance tax acts, which provide an exclusive method of collection; (3) that there is no law of the State of Louisiana levying a severance tax on the purchaser of oil and that such a law would be unconstitutional and in violation of section 21 of article 10 and section 15 of article 4 of the Constitution of the State of Louisiana, and also in violation of the due process and equal protection*clauses of the Constitutions of the State of Louisiana and of the United States, Const.La.1921, art. 1, §§ 2, 6; Const.U.S.Amend. 14, § 1; (4) that the State, having acquiesced over a long period of time in the method employed by the defendant in determining the
 
 *989
 
 amount of oil purchased, and having accepted payments therefor without questioning the amounts received, is now estopped from claiming any further taxes, interest, penalties, etc., on oil purchased by it as agent of the State; (5) that plaintiff’s claim for any amount, accruing prior to February 17, 1934, is barred by the prescription of 3 years under section 19 of article 19 of the Constitution of 1921, Act No. 148 of 1906, and Act No. 198 of 1914; and (6) in answer to the merits, the defendant reiterated the defenses raised in the several motions and pleas, and invoked the provisions of articles 14 and 15 of the Revised Civil Code and the doctrine of contemporaneous construction.
 

 The trial judge granted the motion for a continuance to allow the defendant an opportunity to take the testimony of nonresident witnesses, and, after hearing, for written reasons, referred to the merits the pleas of nonliability and of estoppel (motions Nos. 3 and 4), and overruled the other motions to dismiss and the plea of prescription. On the merits, the trial judge rendered judgment as prayed for. The defendant has appealed suspensively.
 

 The defendant, appellant here, seems to stress more seriously its defense on. the merits, and argued that phase of the case in its brief first. We shall, therefore, follow the order in which the defendant has presented the case.
 

 The suit is for unpaid severance taxes on oil produced and purchased by the defendant from August 1, 1928, to and including December 31, 1936. There is no dispute as to the quantity of oil involved in this suit. The controversy arises over the question of the measurement of the oil, that is, what is a “barrel of oil of forty-two gallons” under the laws of Louisiana.
 

 The record shows that the defendant, in computing the severance tax due by it on all oil it produced and purchased in the State of Louisiana, adopted what it claims to be
 
 the method of measuring oil for the purpose of buying and selling oil as it prevailed in the oil industry.
 
 By that method the gross quantity was first ascertained. From that gross quantity it deducted the percentage of basic sediment, dirt, water, and other impurities contained in the oil. Corrections were then made for temperature so as to uniformly base the volume at 60 degrees Fahrenheit. After making the deductions for impurities and correcting for temperature, it made an additional deduction of 2 per cent, for which the defendant claims it incurred in handling the oil from the place of severance to the point of destination at its refinery, except on the oil produced and purchased in the parishes of Jefferson Davis and Acadia, in which case a deduction of 1 per cent, was made.
 

 The State contends that, for the purpose of computing the amount of the severance tax, the oil should be measured
 
 at the place of severance,
 
 that is, as it passes out of the well into what are known as gauge tanks. The State admits that there is no severance tax due on anything except the oil, and therefore, it is proper to make deductions from the gross amount of the oil the percentage of basic sediment, dirt, water, and other impurities contained in the oil, and
 
 *991
 
 that it is proper to make corrections for temperature, but that the deductions made by the defendant for loss in handling between the place of severance and the point of destination of the oil is an arbitrary deduction, not authorized by law in computing the severance taxes. This deduction forms the basis of this suit.
 

 On the other-hand, it is the contention of the defendant that, as the State of Louisiana, in the first severance tax.act in 1912, Act No. 209 of 1912, did not define a barrel of oil and did not provide a method for determining what is a barrel of oil, the Legislature in enacting all of the severance tax laws of Louisiana used the term “barrel of oil” as understood and adopted in the oil industry for the purchasing and selling of oil, and the long-continued acceptance and acquiescence by the State of the oil industry’s method of determining what is a “barrel of oil” amounted to a construction of law, estopping the State from now giving a new meaning to the term “barrel of oil.”
 

 In order to establish this custom, the defendant produced a number of witnesses to testify in support of its contention, which was objected to by the State on the ground that there is no ambiguity in the severance tax laws of this State with reference to the measuring of oil; that “a barrel of oil of 42 gallons” is fixed, definite and certain, and that evidence is not admissible to establish usage and custom in contravention of positive law on the same subject matter. The judge allowed the evidence to be introduced and referred it to the effect. As a consequence of the ruling of the court a great mass of testimony was taken and a great number of documents were introduced comprising several hundred pages of evidence.
 

 It is the well-established and universal rule of law in the interpretation of statutes levying taxes that they are to be interpreted liberally in favor of the taxpayer and all doubts and ambiguities are to be construed against the State and in favor of the taxpayer. Moreover, if the act be susceptible of more than one reasonable interpretation, the one less onerous to the taxpayer must be adopted. Barber Asphalt Paving Company v. Watt, 51 La.Ann. 1345, 26 So. 70; Town of Minden v. Glass, 132 La. 927, 61 So. 874; State v. State Agricultural Credit Corporation, 176 La. 590, 146 So. 159; United States v. Merriam, 263 U. S. 179, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547; Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156; Miller v. Standard Nut Margarine Company, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. But
 
 "if a statute has given a definite meaning to any particular word no evidence of custom will he admitted to attach any other meaning to it.”
 
 (Italics ours.) 17 C. J. 476, § 36. See, also, Harrod v. Lafarge, 12 Mart.,O.S., 21; Glasgow v. Stevenson, 6 Mart.,N.S., 567; Cranwell v. The Fanny Fosdick, 15 La.Ann. 436, 77 Am.Dec. 190; Meyer v. Vicksburg, S. & P. R. Co., 35 La.Ann. 897; Clement v. South Atlantic S.S. Line, 128 La. 399, 54 So. 920; Walker v. Western Transport Co., 3 Wall. 150, 18 L.Ed. 172; Quinette v. Bisso, 5 Cir., 136 F. 825, 69 C.C.A. 503, 5 L.R.A.,N.S., 303. And the rule that “a definitely settled adminis
 
 *993
 
 trative construction of a statute is entitled to the highest respect does not apply in cases where the construction is not doubtful.” Executive construction cannot change the plain language of a statute. United States v. Missouri P. R. Co., 278 U. S. 269, 49 S.Ct. 133, 73 L.Ed. 322; Studebaker v. Perry, 184 U.S. 258, 22 S.Ct. 463, 46 L.Ed. 528; Houghton v. Payne, 194 U.S. 88, 24 S.Ct. 590, 48 L.Ed. 888; Smith v. Payne, 194 U.S. 104, 24 S.Ct. 595, 48 L.Ed. 893; Penick & Ford v. Ehret, 166 La. 1, 116 So. 572. Moreover, where an officer’s duties are prescribed by statute, usage will not excuse their discharge in a different manner. 17 C.J. 476, § 37, and cases cited thereunder.
 

 This court, more than 100 years ago, in the case of Ledoux v. Armor, 4 Rob. 381, held that “where the law is express, no man or set of men can create a custom for their own benefit or convenience, and give to that custom a force paramount to that of the law.” See, also, Harrod v. Lafarge, supra; Robertson v. Western Marine & Fire Ins. Co., 19 La. 227, 36 Am.Dec. 673.
 

 In reviewing the severance tax laws of this State it is revealed that acts were passed by the Legislature to carry into effect article 229 of the Constitutions of 1898, as amended in 1910, see Act No. 154 of 1910, and of 1913. The article, since the adoption of the constitutional amendment of 1910, is identical in both Constitutions. The article authorized the Legislature to levy a
 
 license tax
 
 on persons pursuing the several trades, professions, vocations, and callings and it also provided that “those engaged in the business of severing natural resources * * * from the soil or water * * * may also be rendered liable to a
 
 license tax.”
 
 (Italics ours.) It provided further that the license tax could be either graduated or fixed according to the quantity or value of the product at the place where it was severed. In the corresponding provisions of the Constitution of 1921, section 8 of article 10, the clause authorizing a license tax on those engaged in severing the natural resources is eliminated, and the power to tax natural resources is vested in the Legislature by the provisions of section 21 of the same article, which reads, in part, as follows: “Taxes may be levied
 
 on natural resources
 
 severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance. Such natural resources may be classified for the purpose of taxation and such taxes predicated upon either the quantity or value of the product at the time and place where it is severed.” (Italics ours.)
 

 Pursuant to the authority vested in it by the Constitution of 1921, the Legislature passed Act No. 140 of 1922, levying a tax of 3 per cent, of the
 
 gross market value
 
 upon all natural resources severed from the soil or water, including oil,
 
 to be paid proportionately by the owners thereof at the time of severance.
 

 By Act No. 5 of 1928, sections 2 and 5 of Act No. 140 of 1922, were amended and imposed a tax upon the
 
 quantity
 
 instead of the gross market value. This was the first time that the part of the Constitution authorizing the levying a tax on the basis
 
 *995
 
 of
 
 quantity
 
 was taken advantage of. The pertinent part of section 1 of Act No. .5 of 1928, amending and re-enacting Act No. 140 of 1922, § 2, reads as follows:
 

 “Taxes on natural resources severed from the soil or water, as levied
 
 by
 
 Section 1 of this Act, shall be predicated on the
 
 quantity severed,
 
 and shall be paid at the following rates: .* * *
 

 “(7) a. On oil of 28 gravity and below, four (4) cents per barrel of 42 gallons.
 

 “b. (1) On oil above 28 gravity and not above 31 gravity, four and one-fourth (4)4) cents per barrel of 42 gallons.
 

 “b. (2) On oil above 31 gravity and not above 32 gravity, five (5) cents per barrel of 42 gallons.
 

 “(c). On oil above 32 gravity and not above 36 gravity, eight (8) cents per barrel of 42 gallons.
 

 “(d). On oil above 36 gravity and not above 43 gravity, ten (10) cents per barrel of 42 gallons.
 

 “(e). On oil above 43 gravity, eleven (11) cents per barrel of 42 gallons.”
 

 By Act No. 53 of the Regular Session of 1934 and Act No. 5 of the Third Extra Session of 1934, the severance tax law was again amended but these acts have no bearing on the present case. The severance tax law was completely rewritten by Act No. 24 of the Second Extra Session of 1935, on April 20, 1935, and became effective on May 10, 1935. The act changed the procedure for the determination and collection of the tax, but aside from that change, Act No. 140 of 1922, as amended by Act No. 5 of 1928, and Act No. 24 of the Second Extra Session of 1935, are identical. The procedure for collecting the tax in the latter act supersedes the procedure in the former.
 

 Under section 5 of Act No. 140 of 1922, as amended by Act No.
 
 6
 
 of 1928, § 2, it is provided that:
 

 "Every person, firm, corporation or association of persons severing any natural resources from the soil or water in this State shall, * * *, file with the Supervisor of Public Accounts a statement under oath,
 
 * * *
 
 showing the kind of natural resources and the gross quantity of each so severed or produced.”
 
 (Italics ours.)
 

 Section 5 of Act No. 24 of the Second Extra Session of 1935, which became effective on May 10, 1935, and is the present severance tax law, contains the identical provisions quoted above, except that the tax is now payable to the collector of revenue instead of to the tax collector of the parish.
 

 Thus it may be seen that the tax is now, and has been, since August 1, 1928, based on the
 
 gross production or quantity
 
 of the natural resource
 
 at the time and place of severance
 
 and is computed at so many cents per
 
 “barrel of 42 gallons,”
 
 depending upon the gravity. The tax increases as the gravity ascends. The next question for determination is: What is a “barrel of oil of 42 gallons ?”
 

 In Webster’s New International Dictionary the word “gallon” is defined as
 
 “the volume of 231 cubic inches
 
 (equivalent to 3.7853 liters), and is the same as the old
 
 *997
 
 English wine gallon * * * ”; and in Worcester’s,
 
 “the wine gallon of 231 cubic inches is the government or customs gallon of the United States."
 
 (Italics ours.)
 

 Black and Bouvier, in their law dictionaries, define the word as
 
 “a liquid measure containing two hundred and thirty-one cubic inches,
 
 or four quarts.” (Italics ours.)
 

 In Corpus Juris the word is defined as
 
 “a liquid measure containing two hundred and thirty-one cubic inches,
 
 or four quarts; the Winchester wine gallon of two hundred and thirty-one cubic inches; the gallon of commerce, which is the wine gallon;
 
 the standard gallon of the United States,
 
 and in use in its custom service, and internal revenue.” (Italics ours.) Vol. 27, p. 939.
 

 The framers of the Constitution recognized the necessity for establishing and maintaining uniform weights and measures by giving Congress that power. United States Constitution, art. 1, § 8. Pursuant to this authority, we find that “under a resolution of the senate adopted May 29, 1830, standards of weights and measures were prepared for the use of the customhouse and by joint resolution adopted June 14, 1836, the secretary of the treasury was directed to deliver to the governor of each state of the Union a complete set of these weights and measures to the end that a uniform standard of weights and measures might be established throughout the United States. * * * ” See 68 C.J. 152, § 2.
 

 From the foregoing it may be seen that a “gallon” is universally recognized as a unit of capacity measuring 231 cubic inches in volume, and we, therefore, conclude that the unit of measurement for the purpose of computing the severance tax, as used in the act, is definite and certain. It simply means that each barrel of oil shall contain 42 gallons of 231 cubic inches. It follows that the rules of construction invoked by the defendant are not applicable to the case at bar. Moreover, the record shows conclusively that the State’s officials who were in charge of enforcing the collection of the tax had no knowledge of the fact that the defendant was making a deduction of 2 per cent, from the gross production in computing the tax thereon. The tax returns and reports filed by the defendant did not show this deduction, and it was not until its books were audited by the State’s officials that that fact was discovered. Consequently, the rule of contemporaneous construction invoked by the defendant can have no application. The contention of the defendant that the State and its officials in charge of the collection of the tax
 
 had knowledge of the usage and custom on the purchase and sale of oil in the oil industry
 
 that such a deduction was made on account of the loss in transportation of the oil from the point of severance to its destination (the refinery) can have no application in the computation of severance taxes, especially in the face of the provisions of the severance tax laws which fixed the tax on the gross production at the place of severance.
 

 The next defense urged by the defendant is that it is not liable under the severance tax laws of this State on oil purchased by it, and if we hold that it is, then it
 
 *999
 
 urges, in the alternative, that the acts are unconstitutional in that they are violative of section 21 of article 10 of the Constitution of 1921, which provides that “taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance.”
 

 It is the State’s contention that the tax is imposed on the natural resource and not on the purchaser as such, and that the Legislature, in providing the machinery for the collection of the tax, required the purchaser to withhold and deduct the entire amount of the tax due on the oil, and for that purpose the purchaser became the agent of the State, but that the failure of the purchaser to collect the entire amount 'of the tax cannot be set up as a defense by the purchaser to the State’s right to collect the entire amount.
 

 As previously stated, Act No. 140 of 1922, as amended by Act No. 5 of 1928, and Act No. 24 of the Second Extra Session of 1935, are identical with the exception previously pointed out. Each, as indicated by its title, is an act to carry into effect section 21 of article 10 of the Constitution of 1921
 
 “by levying a tax upon all natural resources severed from the soil or water;
 
 including * * * minerals, such as oil; * * *
 
 fixing liability for, and prescribing the method of collecting and enforcing the payment of such tax.”
 
 (Italics ours.) Seption 1 of the act imposes the tax upon the natural resources severed from the soil or water, to be borne ratably by the owners thereof at the time of severance, etc. Section 2 fixes the tax on the quantity severed and the rates as previously shown. Section 3, among other provisions, provides that the tax shall be collected quarterly by the supervisor of public accounts. Section 4 provides for the apportionment and distribution of the tax allocated to certain parishes under the provisions of the act. Sections 5, 6, and
 
 7
 
 make it the mandatory duty of the one severing the natural resource to file a quarterly report, as prescribed in the acts, with the supervisor-of public accounts, showing, among other things, the gross quantity of natural resources severed or produced, and at the same time to pay the entire amount of the tax on the gross quantity of the natural resource severed, computed at the rate applicable thereto as specified in section 2 of the act. Section 8 provides that, when the one actually engaged in the severing of the natural resource shall sell such natural resource, then the party actually severing such natural resource “may not be required to deduct the tax herein levied, but in which event such deduction shall be made by the purchaser before making payments to each owner of such oil,” and section 9 makes it the mandatory duty of the purchaser of a natural resource to pay the full amount of the tax due thereon and he is authorized to deduct the amount paid from the amount due the owner or owners thereof.
 

 In the State of Texas its act levying a tax on oil production, Act 1933, Reg.Sess., c. 162, as amended by Act 1933, 1st Called Sess., c. 12, contains the provisions that “the .purchaser of oil shall pay the tax on all oil purchased and deduct tax so
 
 *1001
 
 paid from payment due- producer or other interest holder,” section 2 (3), Vernon’s Ann.Civ.St. art. 7057a, § 2 (3), and further provides that “the tax herein levied shall be borne ratably by all interested parties, including royalty interests, and producers and/or purchasers of oil are hereby authorized and required to withhold from any payment due interested parties, the proportionate tax due.” Section 2 (6), Vernon’s Ann.Civ.St. art. 7057a, § 2 (6). In the case of Barwise et al. v. Sheppard, Comptroller of Texas, et al., 299 U.S. 33, 57 S.Ct. 70, 71, 81 L.Ed. 23, the Supreme Court of the United States characterized the above-quoted provisions as
 
 "provisions designed to secure prompt and certain payment of the full tax,”
 
 and, in discussing the matter, the court quoted with approval from the opinion of the Texas Court of Civil Appeals, in the case of Group No. 1 Oil Corporation v. Sheppard, 89 S.W.2d 1021, 1023, the following:
 

 “The legislative intent to levy the tax ratably against all interested parties in the oil produced is also clearly evidenced by the language that ‘the purchaser of oil shall pay the tax on all oil purchased and deduct tax so paid from payment due producer or other interest holder,’ and ‘withhold from any payment due interested parties, the proportionate tax due.’ Vernon’s Ann.Civ.St. art. 7057a, § 2, subds. 3, 6.
 
 These provisions do not levy the tax against the purchaser: He is merely made the agent of the state to collect from the producer or other interest holders the total amount of the tax due; and he is authorized to charge their respective accounts with rthe proportionate tax due.’
 
 That is, the purchaser withholds from the producer only as an interest holder and only to the extent of his interest. Likewise the purchaser withholds from other royalty or interest holders the amount of the tax due on their royalty or other interests. The act, therefore, designates the parties against whom the tax is levied. The amount of the tax due by each is also defined or measured by the extent of interest in the oil produced, or the amount paid because it was produced.” (Italics ours).
 

 And the Supreme Court held that “in view of this exposition of the purpose and meaning of the act, we are of opinion that it is not an arbitrary fiat and does not infringe the due process of law clause of the Fourteenth Amendment.”
 

 It has been universally held by the Supreme Court of the United States and by many of the Supreme Courts of the several States that the imposition upon persons or corporations of the duty of collecting taxes in connection with the business or occupation of such persons or corporations, dealing with the property taxed, is the most convenient and a secure method of collecting the tax and is a valid exercise of the police power of the State. See First National Bank v. Commonwealth of Kentucky, 9 Wall. 353, 19 L.Ed. 701; Bell’s Gap Ry. Co. v. Pennsylvania, 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892; Street Ry. Co. v. Morrow, 87 Tenn. 406, 427, 11 S.W. 348, 353; Citizens’ Nat. Bank of Kentucky v. State of Kentucky, 217 U.S. 443, 30 S.Ct. 532, 54 L.Ed. 832; Van Slyke v. Wisconsin, 154 U.S. 581, 14 S.Ct.
 
 *1003
 
 1168, 20 L.Ed. 240; Pierce Oil Corp. v. Hopkins, 264 U.S. 137, 44 S.Ct. 251, 68 L.Ed. 593; Standard Oil Co. v. Jones, 48 S.D. 482, 205 N.W. 72; Haight v. Pittsburg, Ft. W. & C. Ry. Co., 6 Wall. 15, 73 U.S. 15, 18 L.Ed. 818; Monamotor Oil Co. v. Johnson, 292 U.S. 86, 54 S.Ct. 575, 78 L.Ed. 1141; Standard Oil Co. v. Brodie, 153 Ark. 114, 239 S.W. 753; Cooley on Taxation, 2d Ed., p. 432.
 

 In the case of Pierce Oil Corp. v. Hopkins, supra, the validity of an Arkansas statute imposing a 1 cent tax on gasoline was assailed on the ground that the seller is required to collect and pay the tax laid on the purchasers and to make monthly reports and payments entailing appreciable expense, and in disposing of that contention the Supreme Court said:
 
 “A short answer to this argument is that the seller is directed to collect the tax from the purchaser when he makes the sale, and that a state which has, under its Constitution, power to regulate the business of selling gasoline,
 
 * * *
 
 is not prevented by the due process clause from imposing the incidental burden”
 
 (Italics ours.)
 

 The leading case on the subject was decided by the United States Supreme Court in First National Bank v. Commonwealth of Kentucky, 9 Wall. 353, 363, 19 L.Ed. 701. In that case one of the defenses raised was the State’s right to compel the bank to collect and pay a tax of 50 cents per share on the stock of the bank, and in deciding that issue the court said:
 

 “A very nice criticism of the proviso to the 41st section of the National Bank Act, which permits the States to tax the shares of such bank, is made to us to show that the tax must be collected- of the shareholder directly, and that the mode we have been considering is by implication forbidden. But we are of opinion that while Congress intended to limit state taxation to the shares of the Bank, as distinguished from its capital, and to provide against a discrimination in taxing such Bank shares unfavorable to them, as compared with the shares of other corporations, and with other moneyed capital, it did not intend to prescribe to the States the mode in which the tax should be collected.
 
 The mode under consideration is the one which Congress itself has adopted in collecting its tax on dividends, and on the income arising from bonds of corporations. It is the only mode which, certainly cmd withoiit loss, secures the payment of the tax on all the shares, resident or nonresident;
 
 and, as we have already stated, it is the mode which experience has justified in the New England States as the most convenient and proper, in regard to the numerous wealthy corporations of those States.” (Italics ours.)
 

 In the case of Monamotor Oil Company v. Johnson, 292 U.S. 86, 54 S.Ct. 575, 578, 78 L.Ed. 1141, it was said by the Supreme Court that: “The statute in terms imposes a tax on motor vehicle fuel used or otherwise disposed of in the state. Instead of collecting the tax from the user through its own officers, the state makes the distributor its agent for that purpose.
 
 *1005
 

 This is a common and, entirely lawful
 
 arrangement.’’ (Italics ours.)
 

 This court, in the case of Board of Administrators of Charity Hospital v. Richhart et al., 139 La. 446, 71 So. 735, 736, stated that the constitutionality of a statute requiring auctioneers to collect and turn over to the hospital a charge imposed upon auction sales was challenged several times in vain, and in maintaining the constitutionality of the law, said “that the right to have one’s property sold at public auction by an auctioneer was not an absolute right, but a privilege which the state might grant or withhold, and for the exercise of which the Legislature had exacted a charge of the owner of the property and imposed a duty upon the auctioneer, without violating any provision of the Constitution.”
 

 One of the cases referred to by the court in the above opinion was State of Louisiana v. C. E. Girardey, 34 La.Ann. 620. In that case the State sued to recover from Girardey, an auctioneer, the duty of one-half of 1 per cent, on the price of sales made by him as a licensed auctioneer, under sections 141 to 152 of the Revised Statutes, which imposed upon sales at auction a duty of one-half of 1 per cent, upon the amount of the sale. The statutes likewise imposed upon the auctioneer the duty of collecting the tax and paying it to the State. The auctioneer failed in his duty and the State brought suit for the purpose of holding him personally liable. The defense was stated in the case to be substantially “that the duty is imposed upon, and payable primarily by, the owner of property sold, and not by the auctioneer; that the auctioneer’s responsibility to the State is conditioned upon the payment to him by the owner; and that the law affords him no means of enforcing payment by the owner.” In disposing of the matter, the court said:
 

 “The provisions of the law are too clear to be misunderstood. The charge is to be paid by the owner to the auctioneer, and the latter has the unquestioned right to require and enforce the payment. Boye v. Girardey, 28 La.Ann. 717; Wintz v. Girardey, 31 La.Ann. 381.
 

 “But it is made the unconditional duty of the auctioneer to pay the charge to the State. This duty is expressly covered by his bond, and, in case of his neglect to pay, he forfeits his license. R.S. 140, 146.
 

 “The leuw does not concern itself with whether he collects or not. It is his duty to collect.
 
 It is in his power to collect, because he cannot be compelled to make a sale, unless the owner pays, or secures to his satisfaction the payment of this charge.
 

 “If he chooses to remit the charge, or to take the risk of payment, the State cannot suffer.
 
 He knows that the law requires him to pay, in any event, and he must protect himself. If he chooses to make the sale and take his chance of collection, the risk is his own, and, the sale being made and completed,
 
 his liability to the State is absolute.”
 
 (Italics ours.)
 

 See Lionel’s Cigar Store v. McFarland, 162 La. 956, 111 So. 341.
 

 
 *1007
 
 One of the inherent powers of the State is to conserve her natural resources and to regulate the severance thereof. By constitutional provision, her authority to tax her resources is fixed. The Legislature, therefore, in levying such a tax, had the right to make provisions designed to secure the prompt and certain payment of the full tax by charging the party actually severing or purchasing the natural resource when sold) with the primary duty to pay the full amount of the tax and, at the same time, authorize and require the purchaser to withhold out of the purchase price due the respective owners of the natural resource severed the proportionate part due by them. In other words, the State had the right to make the producer or the purchaser her agent for the purpose of collecting the tax she imposed on the natural resources severed from her soil or water instead of collecting the same direct from the owners thereof through her officers.
 

 The law has imposed a mandatory and unconditional duty upon the purchaser of a natural resource to pay the. severance tax on such resource so purchased, and we ,are of the opinion that the failure of such purchaser to deduct the amount paid from the purchase price thereof, as authorized and required by the acts, cannot be set up as a defense to the right of the State to collect the tax from the purchaser. We, therefore, conclude that the defense urged against the State’s right to collect the tax from the purchaser is without merit.
 

 We shall now dispose of the defendant’s preliminary motions to dismiss the plea of prescription.
 

 The procedure invoked by the State in instituting this suit and under attack by the defendant is authorized by Act No. 14 of the Second Extra Session of 1935, and, as indicated by its title, is “An Act Providing
 
 additional procedure to facilitate and expedite the determination and trial of all claims by or on behalf of the State for taxes,
 
 excises and licenses.” Section 1 provides that such proceedings shall be summary and be heard at such time as may be fixed by the court, which shall not be less than 2 nor more than 10 days after notice to the defendant or opposing party. Section 2 provides that all defenses must be filed at one time prior to the time fixed for hearing and that no continuance may -be granted by the court to any defendant except for legal grounds. Section 3 fixes the time within 'which judgment must be rendered and signed and when such judgment becomes final. It also declares that only suspensive appeals may be granted and must be perfected within 5 calendar days from the rendition of' the judgment. Section 4 provides that the allegations of the State’s petition shall constitute a prima facie case whenever accompanied by proper affidavit, and the burden of proof to establish the contrary shall then rest on the defendant. Section 5 states that the act.
 
 “shall be construed as providing additional remedies, and only laws or parts of laws inconsistent or in conflict with the provisions hereof are hereby repealed.’’
 
 (Italics ours.)
 

 It is evident from a reading of the act that the Legislature sought to provide in addition to all other procedure then in effect an
 
 "additional procedure to facilitate
 
 
 *1009
 

 and expedite”
 
 the collection of the State’s revenues. The proposition then resolves itself into the question of the right of the Legislature to provide an additional method of procedure to collect the taxes of the State. If it has that right, it logically follows that the State may follow this additional method of procedure, unless it was superseded by Act No. 24 of the Second Extra Session of 1935, or its operation deprives the defendant of some rights guaranteed it by the Constitutions of this State and the United States.
 

 The general rule, as stated in Corpus Juris, is that “there is no vested right to a particular remedy. A statute is not unconstitutional, therefore, merely because it changes, abolishes, or impairs an existing remedy for a cause of action that has accrued prior to the passage of the statute. * * *” 12 C.J. § 558, p. 974. “And so acts providing a new remedy, or enlarging a remedy already existing, or repealing an exemption from- liability in a particular form of remedy, although made to operate retrospectively, do not, per se, impair vested rights. * * * ” 12 C.J. § 559, p. 975. See, also, State v. Brossette, 163 La. 1035, 1038, 113 So. 366, 367; Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184; Ettor v. Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773; People v. McGoorty, 270 Ill. 610, 618, 110 N.E. 791; Red River Valley Nat. Bank v. Craig, 181 U.S. 548, 553, 21 S.Ct. 703, 45 L.Ed. 994; Backus v. Fort Street Union Depot Co., 169 U.S. 557, 18 S.Ct. 445, 42 L.Ed. 853.
 

 But the defendant challenges the constitutionality of Act No. 14 of the Second Extra Session of 1935 on the ground that it violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and also violates the following sections of the Constitution of the State of Louisiana for the year 1921, to wit: Sections 2 and 6 of article 1, section 10 of article 7, and sections 1 and 2 of article 7.
 

 “It is a firmly established principle of law that the constitutionality of a statute may not be attacked by one whose rights are not affected by the operation of the statute.
 
 This rule applies to all cases both at law and in equity, and is equally applicable in both civil and criminal proceedings. ' A constitutional question may not be raised by one whose rights are not directly and certainly affected, nor in a case where no attempt is being made to enforce the provision attacked.
 
 In other words, one attacking the constitutionality of a statute must show that it affects him injuriously and actually deprives him of a constitutional right.
 
 It is not sufficient that the statute is unconstitutional as to other persons or classes of persons; it must affirmatively appear that the person attacking the statute comes within the class of persons affected by it. * * * ” 12 C.J. 760 et seq. See, also, City of New Orleans v. Dameron et al., 149 La. 535, 541, 89 So. 685; State v. Thrift Oil & Gas Co., 162 La. 165, 110 So. 188, 51 A.L.R. 261; Bruning v. City of New Orleans, 165 La. 511, 115 So. 733; Vander
 
 *1011
 
 Sluys v. Finfrock, 158 La. 175, 183, 103 So. 730; Brown-Forman Company v. Commonwealth of Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883; Straus v. Foxworth, 231 U.S. 162, 34 S.Ct. 42, 58 L.Ed. 168.
 

 The record shows that the defendant was apprised of the State’s intention to file this suit in December of 1933 after an investigation of its books had been made and it was found that the defendant was not remitting severance taxes on the basis of 100 per cent, gross production on the oil produced and purchased by it, more than 3 years before defendant was cited, through its duly authorized agent for service of process; that the defendant was allowed 8 full days after service by the court below to make its return and to file its pleadings; that five exceptions, an answer, and a motion for a continuance were filed by the defendant within the time fixed by the trial court; that the exceptions were argued orally and' authorities were submitted by both plaintiff and defendant; that the court took the exceptions under advisement; that the motion for a continuance was granted and the defendant was allowed 14 days additional time within which to obtain evidence and prepare for trial; that a trial was had, lasting 2 full days, and the defendant consumed more than a full day to present its case to the court; that the case was laid over more than 2 weeks while the testimony was being transcribed; that, after the testimony was transcribed and filed, the case was argued thoroughly and authorities were submitted by both plaintiff and defendant, and thereupon the case was taken under advisement by the court; and that the trial judge was most considerate and permitted the defendant to introduce and file in evidence every document offered by it, ruling all objections to the effect rather than to the admissibility.
 

 The record reveals, in our opinion, that the defendant was not only afforded reasonable notice and a fair opportunity to be heard, but it was thoroughly prepared for the trial of the case; in fact, counsel for defendant availed themselves of every possible defense at their command. It was not shown that, by proceeding under Act No. 14 of the Second Extra Session of 1935 instead of under the provisions of Act No. 24 of the same session, under which act it is contended by the defendant that the State should have proceeded for the purpose of collecting severance taxes in this case, defendant has been affected thereby injuriously or has been deprived of a constitutional right. The defendant, therefore, having failed to show affirmatively that its alleged rights are adversely affected by the statute in question, is without right to contest the constitutionality of the act m question.
 

 Ordinarily this would suffice to dispose of the issue, but since counsel for defendant have laid such stress upon defendant’s attack of the constitutionality of Act No. 14, we find that the district judge, in a well-considered opinion, disposed of the many grounds of attack made by the defendant, from which we quote with approval as follows:
 

 
 *1013
 
 “On the same date, to-wit, the 17th of February, 1937, (the date the suit was filed) the Court signed an order requiring the defendant company to show cause on the 26th day of February, 1937, why judgment should not be rendered in favor of the plaintiff as prayed for.
 

 “On the date fixed in the order, defendant company, through counsel, appeared in court and filed five exceptions in which they assailed the constitutionality of the act on several grounds, which will be considered in the order in which they were filed. The first ground of attack under Exception No. 1, which has been stressed by counsel in their arguments and briefs, is that this court is without jurisdiction for the reason that said act is unconstitutional because, ‘the statute denies the right to a fair and impartial trial and is an encroachment of the Legislature upon the Judiciary/ and thereby being in contravention of Article 1, section 6, of the Constitution of 1921, which provides as follows:
 

 “ ‘All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay/ and further that the statute deprives and denies the defendant of all privileges granted under the Constitution and the Code of Practice. Counsel further urges and contends that the Act commands a hasty trial of all exceptions and defenses, and thus deprives the defendant of a just and true day in court, which is in violation of article 1, section 2 of the Constitution of 1921, which reads as follows:
 

 “ ‘No person shall be deprived of life, liberty or property, except by due process of law.’
 

 “It is true that Act No. 14 provides that all proceedings brought under said Act for taxes, interest, penalty or attorney’s fees claimed to be due under any statute of the State shall be summary and shall always be tried or heard by preference, in all courts, original and appellate, whether in or out of term time and either in open court or chambers, at such time as may be fixed by the court, which shall be not less than two nor more than ten days after notice to the defendant or opposing party.
 

 “The act further provides that all defenses, whether by exception or to the merits, must be presented at one time and filed in the court of original jurisdiction prior to the time fixed for the hearing, and no court shall consider any defense unless so presented and filed.
 

 “As above pointed out, this suit was filed by the State of Louisiana on February 17th, 1937, and was served on the defendant company on the same day. In the order attached to the suit, the defendant was required and directed to show cause on the 26th day of February, 1937, why a judgment should not be rendered against it and in favor of the State of Louisiana as prayed for.
 

 “It is, therefore, apparent that the defendant has a period of eight full days within which to prepare and submit its defenses. The court could not have allowed
 
 *1015
 
 more than eight full days for the reason that the ninth day fell on Saturday, and under the rules of this Court no court procedure is held on that day,. Neither could the rule have been made returnablé-on the tenth day for this was a Sunday. The court does not think that the provisions of the act above referred to, under the circumstances of the case, operate or serve to deprive defendant of a fair and impartial trial, or denies to it that hearing or day in court to which it is entitled, or denies any of the privileges granted by the Constitution. Taking into consideration the fact that the Statute is a tax measure and intended to facilitate the state in the collection of its revenues, the Court is of the opinion that the defendant has had a reasonable time within which to prepare and submit its defenses. Nor is, the Court of the opinion that it is a measure which constitutes an encroachment by the Legislative on the Judiciary.
 

 “The challenged act, in the opinion of the Court, is one which merely provides additional procedure and remedies for the collection of the revenues of the State, and each succeeding legislature may, if the exigencies of the case or times demand it, establish and set up different procedure and remedies, subject, of course, to the restrictions, that the legislation does not impair a contract or divest one of a-vested property right.
 

 “ ‘There is no vested right to a particular remedy.’ C.J., vol. 12, p. 974, and citations.
 

 “‘No vested rights are impaired by a statute which creates a remedy for an existing right for which there has been no remedy.’ C.J., vol. 12, p. 975, § 559.
 

 “ ‘Matters which belong to the remedy are subject to change and alteration, and even repeal, provided the legislation does not operate to impair a contract or deprive one of a vested property right.’ Ettor v. Tacoma, 228 U.S. 148, 33 S.Ct. 428, 430, 57 L.Ed. 773.
 

 “ ‘There can be no vested right in any particular remedy or any special mode of administering it.’ People v. McGoorty, 270 Ill. 610, 618, 110 N.E. 791, 794.
 

 “ ‘A party cannot acquire a vested right in a remedy, or any part of it.’ Guernsey County Com'rs v. Black, 34 Ohio Cir.Ct.R. 164, 168, C.J., vol. 12, p. 974.
 

 “ ‘And so acts providing a new remedy, or enlarging a remedy already existing, or repealing an exemption from liability in a particular form of remedy, although made to operate retrospectively, do not, per se, impair vested rights.’ C.J., vol. 12, p. 975.
 

 “ ‘There is no vested right in a mode of procedure. Each succeeding legislature may establish a different one, providing, only, that in each is preserved the essential elements of protection.’ Backus v. Fort Street Union Depot Co., 169 U.S. 557, 18 S.Ct. 445, 450, 42 L.Ed. 853; Red River Valley Nat. Bank v. Craig, 181 U.S. 548, 553, 21 S.Ct. 703, 45 L.Ed. 994. See, also, Campbell v. Iron-Silver Min. Co., 8 Cir., 83 F. 643, 646.
 

 “ ‘Remedial statutes and statutes governing procedure have application to all actions brought subsequent to their promulgation.’ State v. Brossette, supra; Rossville Commerical Alcohol Corporation v. Dennis
 
 *1017
 
 Sheen Transfer Co., 18 La.App. 725, 138 So. 183.
 

 “ ‘Legislation which only changes remedy and not substantive right has retroactive effect.’ Dehan v. Hotel and Restaurant Employees et al., La.App., 159 So. 637, 638, 647.
 

 “ ‘Rule that laws will be construed to operate prospectively unless intent is clearly shown to have them retroactive does not apply to acts purely remedial unless contrary intent is plainly shown. * * * A remedial statute is one which confers a remedy and a remedy “is the means employed to enforce a right or redress an injury.”’ Paulsen v. Reinecke, 181 La. 917, 924, 160 So. 629, 97 A.L.R. 1184.
 

 “ ‘The state has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights, or conflict with specific and applicable provisions of the Federal Constitution.’ Brown v. New Jersey, N.J.1899, 175 U.S. 172, 175, 20 S.Ct. 77, 78, 44 L.Ed. 119.
 

 “ ‘A state has full power over remedies and procedure in its own courts, and can make any order it pleases in respect thereto, provided that substance of right is secured without unreasonable burden to parties and litigants.’ York v. Texas, Tex. 1890, 137 U.S. 15, 20, 11 S.Ct. 9, 10, 34 L.Ed. 604.
 

 “ ‘When the essential elements of a court having jurisdiction in which an opportunity for a hearing is afforded are present, the power of a state over its methods of procedure is substantially unrestricted by the due process clause of the Constitution.’ Jordan v. Massachusetts, Mass. 1912, 225 U.S. 167, 32 S.Ct. 651, 652, 56 L.Ed. 1038.
 

 “ ‘If the supreme court of a state has acted in consonance with the constitutional laws of a State and its own procedure, it could only be in very exceptional circumstances that [the Supreme Court of the United States] would feel justified in saying that there had been a failure of due legal process. The plaintiff in error must have been deprived of one of those fundamental rights, the observance of which is indispensable to the liberty of the citizen.’ Allen v. Georgia, Ga.1897, 166 U.S. 138, 17 S.Ct. 525, 526, 41 L.Ed. 949.
 

 “ ‘The limit of the full control which the state has in the proceedings of its courts, both in civil and criminal cases, is subject only to the qualification that such procedure must not work a denial of fundamental rights, or conflict with specific and applicable provisions of the Federal Constitution.’ West v. Louisiana, La.1904, 194 U.S. 258, 263, 24 S.Ct. 650, 652, 48 L.Ed. 965.
 

 “A careful reading and analysis of these cases leaves the Court with the opinion that the Legislature acted well within its authority when it passed the Act in question..
 

 “The next attack on the statute is stressed in paragraph two of defendant’s brief as follows:
 

 “ ‘The statute does not provide for due notice and an opportunity to be heard, and therefore denies due process of law.’
 

 
 *1019
 
 “As stated above, the defendant, under the order of the court, was given eight full days to prepare and file its pleadings. When the case came on for hearing on February 26th, 1937, a motion for a continuance was presented by the defendant, setting forth that the evidence of a number of witnesses who are. non-residents of this parish, and whose attendance at the trial could not be compelled, is material and necessary to its defense. Upon this showing, duly sworn to by counsel for the defendant, the Court granted an additional period of fourteen days so as to enable the defendant to obtain the evidence of its non-resident witnesses either under commission or de hene esse.
 

 “The Court considers that it was well within its authority in granting this additional delay of fourteen days as the showing made by the defendant constitutes legal grounds set forth in the Code of Practice. In addition thereto, counsel for the State made no objection and (agreed t-hat the continuance requested should be granted for a period of at least fourteen days. Therefore, the defendant company has had twenty-two days within which to prepare for trial and made such search and examination of its records as will enable it to present a proper defense.
 

 “A reading of the petition discloses that in paragraph six of the State’s pleadings the allegation is made that demand was made upon the defendant for the tax claimed in this suit as soon as the tax collecting authorities ascertained that the defendant was withholding the amount of the taxes alleged to be due and owing the State. It, therefore, seems reasonable to conclude that the defendant was not taken by surprise as a previous demand had been made for the amount alleged to be due. The Court knows of no law or authority which limits or restricts the Legislature to the giving of any certain number of days of notice prior to the time of a bearing in a tax matter.
 

 “In the case of Roller v. Holly, 176 U.S. 398, 20 S.Ct. 410, 414, 44 L.Ed. 520, cited by learned counsel for defendant in his exceptions, it was held that a law of Texas which provided for five days’ notice of a foreclosure proceeding was not a reasonable notice. In the body of the opinion in that case, we find the following:
 

 “ ‘What shall be deemed a reasonable notice admits of considerable doubt.’
 

 “And it is further stated in that opinion that upon the question of the length of such notice there is a singular dearth of judicial decision.
 

 “In deciding the case of Roller v. Holly, supra, the United States Supreme Court quoted 2nd Chitty’s 175, in reference to summary proceedings. The quotation front Chitty’s by the United States Supreme Court is, in part, as follows:
 

 “ 'In the superior courts, in general, at least eight days’ notice of inquiry and of trial are essential for the preparation of the defense.’
 

 “So it appears from this authority that a notice of eight (8) days is sufficient for the preparation of the defense in a trial.
 

 
 *1021
 
 “Counsel for the State has cited a number of cases in his brief in which this point was discussed at length, as follows:
 

 “‘This clause does not necessitate that the proceedings in a state court should be by a particular mode, but only that there shall be a regular course of proceedings, in which notice is given of the claim asserted, and an opportunity afforded to defend against it. If the essential elements of full notice and an opportunity to defend were present, the United States Supreme Court will accept the interpretation given by the state court as to the regularity under a state statute of the practice pursued in a particular case.’ Simon v. Craft, Ala.1901, 182 U.S. 427, 436, 21 S.Ct. 836, 45 L.Ed. 1165.
 

 “ ‘The due process clause of the Fourteenth Amendment to the Constitution of the United States does not control mere forms of procedure in state courts or regulate practice therein. All its requirements are complied with, provided in the proceedings which are claimed not to have been due process of law the person condemned has had sufficient notice and adequate opportunity has been afforded him to defend.’ Louisville, etc., R. Co. v. Schmidt, Ky.1900, 177 U.S. 230, 20 S.Ct. 620, 44 L.Ed. 747; Illinois Cent. R. Co. v. Paducah Brewery Co., 1914, 157 Ky. 357, 163 S.W. 239.
 

 “ ‘The Fourteenth Amendment in no way undertakes to determine by what process legal rights may be asserted or legal obligations be forced, provided the method of procedure adopted for these purposes gives reasonable notice and accords fair opportunity to be heard before the issues are decided.’ Missouri, etc., R. Co. v. Mitcham, 1909, 57 Tex.Civ.App. 134, 121 S.W. 871.
 

 “ ‘A notice of ten days from the last of three successive daily publications, of a reassessment for taxation for public improvements, was held to be sufficient.’ Bellingham Bay, etc., R. Co. v. New Whatcom, Wash.1899, 172 U.S. 314, 318, 19 S.Ct. 205, 43 L.Ed. 460, wherein the court said: ‘It may be that the authority of the legislature to prescribe the length of notice is not absolute and beyond review, but it is certain that only in a clear case will a notice authorized by the legislature be set aside as wholly ineffectual on account of the shortness of the time.’
 

 “ ‘Where a statute imposing the payment of a tax on gross receipts of sleeping and parlor car companies, requires the companies to make a report, a further provision that if the report is not made, the comptroller is to estimate the gross receipts and add ten per cent, of the amount of the taxes as a penalty, does not deny due process of law. If the companies do as required there is nothing to be heard about, and the provision in case of their failure to report is for their failure to do their duty; in that event their chance and right to be heard have gone by.’ Pullman Co. v. Knott, Fla. 1914, 235 U.S. 23, 35 S.Ct. 2, 59 L.Ed. 105.
 

 “ ‘In the matter of taxation “due process of law” does not mean by a judicial proceeding. The nation from whom we inherit the phrase “due process of law” has never relied upon the courts of justice for
 
 *1023
 
 the collection of her taxes, though she passed through a successful revolution in resistance to unlawful taxation.’ McMillen v. Anderson, La.1877, 95 U.S. 37, 41, 24 L.Ed. 335. See, also, Ballard v. Hunter, Ark. 1907, 204 U.S. 241, 258, 27 S.Ct. 261, 51 L.Ed. 461; Chicago, etc., R. Co. v. Drainage Dist. No. 8, D.C.Iowa 1917, 253 F. 491.
 

 “ ‘If a taxpayer be given an opportunity to test the validity of the tax at any time before it is made final, whether the proceedings for review take place before a board having a quasi-judicial character, or before a tribunal provided by the state for the purpose of determining such questions, due process of law is not denied.’ Hodge v. Muscatine County, Iowa 1905, 196 U.S. 276, 281, 25 S.Ct. 237, 49 L.Ed. 477. See, also, People of New York v. New York State Board of Tax Com’rs, 1905, 199 U.S. 48, 25 S.Ct. 713, 50 L.Ed. 79, affirming 1903, 174 N.Y. 417, 67 N.E. 69, 63 L.R.A. 884, 105 Am.St.Rep. 674; Susman v. Board of Public Education, D.C.Pa.1915, 228 F. 217, appeal dismissed, 1918, 245 U.S. 636, 38 S.Ct. 190, 62 L.Ed. 524.
 

 “ ‘In matters of taxation, it is sufficient that the party assessed should have an opportunity to be heard, either before a judicial tribunal, or before a board of assessment, at some stage of the proceedings.’ Pittsburgh, etc., R. Co. v. Board of Public Works, W.Va.1898, 172 U.S. 32, 45, 19 S.Ct. 90, 43 L.Ed. 354.
 

 “ ‘When, on the collection of back taxes, a state court has afforded to the taxpayer full opportunity to be heard on the question of the validity and amount of the tax, the taxpayer has been accorded due process though the statute does not require notice to be given of the assessment.’ Security Trust, etc., Co. v. Lexington, Ky.1906, 203 U.S. 323, 27 S.Ct. 87, 51 L.Ed. 204.
 

 “ ‘A statute does not deny “due process of law” which enacts that when any person shall fail or refuse to pay his license' tax, the collector shall give ten days’ written or printed notice to the delinquent requiring its payment; and the manner of giving this notice is fully prescribed. If at the expiration of this time the license “be not fully paid, the tax collector may, without judicial formality, proceed to seize, and sell, after ten days’ advertisement, the property” of the delinquent, or so much as may be necessary to pay the tax and costs.’ McMillen v. Anderson, La.1877, 95 U.S. 37, 41, 24 L.Ed. 335.
 

 “ ‘Due process of law is afforded litigants if they have an opportunity to be heard at any time before final judgment is entered.’ Wilson v. Standefer, Tex.1902, 184 U.S. 399, 415, 22 S.Ct. 384, 46 L.Ed. 612.
 

 “In the case at bar it is well to observe that the defendant is a Louisiana corporation with its domicile in the Parish of East Baton Rouge within four miles of the court in which the suit was filed, so there was no occasion for delay in service of the petition and citation, thus affording to the defendant, which is being sued at its domicile, a period of eight full days within which to prepare and file its pleadings. On motion of defendant company, concurred in by counsel for the state, an additional fourteen
 
 *1025
 
 days was granted, or a total of twenty-two days within which to prepare for trial.
 

 “These facts considered in reference to the opinion expressed by the various courts in the cases cited above strengthened the conviction and opinion of this court that Act No. 14 affords and gives all defendants ample and sufficient notice and opportunity to be heard and that the ‘due process of law” and the ‘equal protection of law’ clauses in either constitution are not violated or encroached upon.
 

 “The next ground of attack upon the statute emphasized and stressed by counsel for the defendant in paragraph 3 of his brief is as follows:
 

 “ ‘The statute creates a presumption that is arbitrary and that operates to deny a fair opportunity to repel' it, in violation of the Due Process Clause of the Fourteenth Amendment.’
 

 “In view of the fact that Act No. 14 is a tax measure and that it was framed and passed by the legislature for the express purpose of providing an additional procedure for the transaction of important business of the state, and to hasten and speed up the collection of the state’s revenues, the Court is of the opinion that the provision in the act in reference to the burden of proof being cast upon the defendant is not unusual or intended to deprive defendant company of any of the privileges and rights afforded to them by the Constitution of Louisiana or of the United States.
 

 “In Act No. 148 of the General Assembly for the year 1906, which said act is cited by learned counsel for defendant in support of their plea of prescription, we find the following:
 

 “ ‘Be it further enacted, etc., that in all proceedings, brought by the State, a municipality, town or parish of this State for licenses or additional licenses that burden of proof on all questions of fact shall be upon the defendants, but only as to those facts which the tax collector, his deputy or attorney shall swear are, to the best of his knowledge or belief,, true.’ * * * [Section 3].
 

 “The courts of other states and the Supreme Court of the United States seem to recognize this rule, as disclosed by the following cases cited by. counsel for the State in his brief:
 

 “‘A state statute providing that in case of delay in the delivery of a shipment the burden of showing that the delay was not due to negligence shall be on the carrier does not deny due process of law.’ Cunningham v. Chicago, etc., R. Co., Mo.Sup. 1919, 215 S.W. 5.
 

 “ ‘It is well settled that a state may consider proof of one fact presumptive evidence of another, if there is a rational connection between them * * * and also that it may change the burden of proof.’ James-Dickinson Farm Mortgage Co. v. Harry, Ill.1927, 273 U.S. 119, 47 S.Ct. 308, 71 L.Ed. 569.
 

 “ ‘A state statute relating to fire insurance contracts, which directs that “in case of total loss of the property insured, the measure of damages shall be the amount for which the same was insured, less what
 
 *1027
 
 ever depreciation in value below the amount for which the property is insured the property may have sustained between the time of issuing the policy and the time of the loss, and the burden'of proving such depreciation shall be upon the defendant,” does not deprive insurance companies of property without due process of law as precluding the judicial inquiry of liability on policies of fire insurance by a conclusive presumption of fact.’ Orient Ins. Co. v. Daggs, 1899, 172 U.S. 557, 564, 19 S.Ct. 281, 43 L.Ed. 552, affirming (1896) 136 Mo. 382, 38 S.W. 85, 35 L.R.A. 227, 58 Am.St.Rep 638.
 

 “The Court is of the opinion that this contention is without merit.
 

 “The next complaint is stated in paragraph four of defendant’s brief, as follows:
 

 “‘The statute deprives the defendant of its constitutional right of appeal and attempts to limit the jurisdiction of our appellate courts in violation .of the Constitution.’
 

 “It is true that the challenged statute does not allow a devolutive appeal but provides that suspensive appeals may be granted. This being a measure to expedite and speed up the collection of taxes is a sufficient answer or explanation as to why the devolutive appeal was eliminated.
 

 “The Court does not consider the statute, as written, as limiting the right of suspensive appeal to cases only within the discretion of the Court. The Court construes the statute to mean that suspensive appeals must be granted where the bond is furnished and other conditions in the statute are complied with.
 

 “In this connection it is interesting to note the provisions of Act No. 29 of the Regular Session of 1924, commonly known as the ‘Injunction Act’ with respect to the right of suspensive appeal. The title of Act No. 29 reads as follows:
 

 “ ‘An Act To regulate procedure and practice in and power of the courts of this State in respect of temporary restraining orders and preliminary writs of injunction.’
 

 “Under section 5 of this act, the right of suspensive appeal from any order granting a preliminary injunction or a stay of further proceedings in the cause is limited to the discretion of the court. So that where a preliminary injunction has been granted under the provisions of this act, while a litigant may take a devolutive appeal, which does not stay the proceedings, his right to a suspensive appeal or a stay of proceeding is granted only, when the court sees fit to do so. If this procedure has ever been held to be unconstitutional as relating to injunctions, the Court is not aware of it.
 

 “The Court does not consider that the litigant would be deprived of his constitutional right of suspensive appeal, nor does the Court consider that the statute attempts to limit the jurisdiction of the appellate courts in violation of the constitution.
 

 “It cannot be denied that the contested act is rather strict in some of its requirements. But as above pointed out, this is a tax statute, and it was, no doubt, the purpose and intention of the legislature to eliminate all unnecessary delays and facili
 
 *1029
 
 tate the collection of taxes. It cannot be expected that the state, nor can the state be required to resort to ordinary procedure, with all the delay that such procedure necessarily entails, in order to collect its taxes. To force or require it to do so would in all probability impair or affect the fisc of the state. .
 

 “On the whole, the Court is of the opinion that Act No. 14 provides for a fair and impartial trial and a day in court to the taxpayer with sufficient, reasonable, and ample notice and opportunity to be heard. Under the law, the statute should afford the taxpayer a reasonable notice and opportunity to be heard so as to insure a fair and impartial trial and his day in court. Act No. 14 meets these requirements and in the opinion of the Court the act is valid and constitutional and this court has jurisdiction.”
 

 The next defense urged in bar to the procedure in this suit is that the severance taxes must be collected under the provisions of Act No. 140 of 1922, as amended by Act No. S of 1928, and Act No. 24 of the Second Extra Session of 1935, and not under Act No. 14 of the Second Extra Session; but if the later act could be applied, it was superseded by Act No. 24 of the Second Extra Session of 1935. It is the contention of counsel for the defendant that whenever the method of enforcing and collecting the tax is prescribed in the act creating the tax, the method therein prescribed is exclusive; but if we conclude that they are in error in this contention, then they urge that the method of procedure prescribed by Act No. 14 of the Second Extra Session was superseded by Act No. 24.
 

 Act No. 24 of the Second Extra Session of 1935 is “An Act To carry into effect Section 21 of Article 10 of the Constitution of 1921 by levying a tax upon all natural resources severed from the soil or water, * * * fixing liability for,
 
 and prescribing the method of collecting and enforcing such tax "
 
 (Italics ours.)
 

 On this question it is the contention of the State that the procedure prescribed in the act levying the severance tax is not made exclusive by the provisions of the act. The word “exclusive” does not appear in any of the sections of the act, nor does any word equivalent to or synonymous with the word “exclusive.”
 

 It was held in the case of United States v. Chamberlin, 219 U.S. 250, 31 S.Ct. 155, 158, 55 L.Ed. 204, that, even though the statute imposing the tax prescribed a remedy for its collection, the fact that the statute did not prescribe an exclusive remedy, an action lies by the government to recover the amount of a stamp tax paid under the Revenue War Act of 1898, 30 Stat. 448, upon the execution of a conveyance. In that case the court quoted at length from the case of Dollar Savings Bank v. United States, 19 Wall. 227, 22 L.Ed. 80, and said:
 

 “In Dollar Sav. Bank v. United States, supra, an action of debt was sustained to recover the amount of the internal revenue tax imposed by the act of July 13, 1866 (14 Stat. at L. 138, chap. 184), on the undistributed gains carried to the surplus funds of the bank.
 
 It was objected that the act provided a special remedy for the assessment and collection of the tax, and
 
 
 *1031
 

 that no other could he used. But the court, finding no prohibition of the remedy hy action, held the argument untenable,
 
 saying ([19 Wall.
 
 227,
 
 at] pages 238-240 [22 L.Ed. 80]):
 

 “‘It must also be conceded to be a rule of the common law in England, as it is in Pennsylvania and many of the other states, that where a statute creates a right and provides a particular remedy for its enforcement, the remedy is generally exclusive of all common-law remedies.
 

 “ ‘But it is important to notice upon what the rule is founded. The reason of the rule is that the statute, by providing a particular remedy, manifests an intention to prohibit other remedies, and the rule, therefore, rests upon a presumed statutory prohibition. It applies and it is enforced when anyone to whom the statute is a rule of conduct seeks redress for a civil wrong. He is confined to the remedy pointed out in the statute, for he is forbidden to make use of any other. But by the internal revenue law, the United States are not prohibited from adopting any remedies for the recovery of a debt due to them which are known to the laws of Pennsylvania.
 
 The prohibitions, if any, either express or implied, contained in the enactment of 1866, are for others, not for the government. They may be obligatory upon tax collectors. They may prevent any suit at law by such officers or agents. But they are not rules for the conduct of the state.
 
 It is a familiar principle that the King is not bound by any act of parliament unless he be named therein by special and particular words. The most general words that can be devised (for example; any person or persons, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests. He may even take the benefit of any particular act, though not named. The rule thus settled respecting the British Crown is equally applicable to this government, and it has been applied frequently in the different states, and practically in the Federal courts. It may be considered as settled that so much of the royal prerogatives as belonged to the King in his capacity of parens patriae, or universal trustee, enters as much into our political state as it does into the principles of the British Constitution.
 

 “‘It must, then, be concluded that the government is not prohibited by anything contained in the act of 1866 from employing any common-law remedy for the collection of its dues. The reason of the rule which denies to others the use of any other than the statutory remedy is wanting, therefore, in applicability to the government, and the rule itself must not be extended beyond its reason.’ See, also, United States v. Stevenson, 215 U.S. [190, at] page 197, 30 S.Ct. 35, 54 L.Ed. [153] 156.” (Italics ours.)
 

 In the case of Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 181, 182, 70 L.Ed. 373, decided January 11, 1926, the court in discussing the procedure for the collection of taxes, where the remedy is not exclusive, said:
 

 "In the absence of another remedy made exclusive, an action of debt lies to recover taxes where the amount due is cer
 
 *1033
 
 tain or readily may be made certain. United States v. Chamberlin, 219 U.S. 250, 262, 31 S.Ct. 155, 55 L.Ed. 204; [Dollar] Savings Bank v. United States, 19 Wall. 227, 239, 22 L.Ed. 80; Stockwell v. United States, 13 Wall. 531, 542, 20 L.Ed. 491; Meredith v. United States, 13 Pet. 486, 493, 10 L.Ed. 258; United States v. Washington Mills, Fed.Cas.No.16,647, 2 Cliff. 601, 607; United States v. Pacific Railroad, Fed.Cas.No.15,983, 4 Dill. 66.” See, also, Shriver v. Woodbine Sav. Bank of Woodbine, Iowa, 285 U.S. 467, 52 S.Ct. 430, 434, 76 L.Ed. 884.
 

 The case of Pollard v. Bailey, 20 Wall. 520, 87 U.S. 520, 22 L.Ed. 376, 378, cited by defendant in support of its contention, is authority for the rule of law that where a liability, cbupled with a remedy, may be in the statute, that remedy must be employed. The rule, however, is not without exception as was just demonstrated, that is, remedies not made exclusive by statute do not preclude recovery by other actions and particularly when the fisc of the State is involved. Shriver v. Woodbine Savings Bank of Woodbine, Iowa, supra; United States v. Chamberlin, supra; Dollar Savings Bank v. United States, supra.
 

 In the case of Fristoe v. Crowley, 142 La. 393, 76 So. 812, 814, L.R.A.1918C, 254, that issue was never determined by the court, for in that case the court said:
 

 “We see no reason for deciding now whether the municipality must eventually resorf to the ordinary process or may employ the special remedy which the Legislature has attempted to grant for the enforcement of the lien imposed upon the plaintiff’s property. It is sufficient to say that the provisions of the statute that authorized the municipality to create the lien are valid, whether the remedy provided for enforcing the lien is or is not valid legislation.”
 

 An examination of all the other cases cited by counsel for defendant shows that they are not apposite to their contention, but, on the contrary, are in accord with the views we. have expressed.
 

 The procedure prescribed by the severance tax law not having been made exclusive therein, we conclude that the State has the right to proceed under Act No. 14 of the Second Extra Session of 1935, unless that act was superseded or repealed by Act No. 24 of the same session of the Legislature, as claimed by the defendant.
 

 An examination of the two acts shows that they are not in conflict. On the contrary, they are perfectly consistent. Act No. 24 is an act “to carry into effect Section 21 of Article 10 of the Constitution of 1921 by levying a tax upon all natural resources” and to prescribe a
 
 method
 
 for collecting and enforcing payment of such taxes, while Act No. 14 simply provides
 
 an additional method
 
 for the collection of not only severance taxes but all State taxes, licenses, and excises. We, therefore, conclude that Act No. 14 of the Second Extra Session of 1935 was not superseded by Act No. 24 of the same session.
 

 The last plea for our consideration urged by the defendant is that the prescription of 3 years, as established by Acts No.
 
 *1035
 
 148 of 1906 and No. 198 of 1914, applies to the additional
 
 severance taxes
 
 claimed in this suit for the years 1928 through 1933.
 

 Act No. 148 of 1906, as indicated by its title is “An Act To carry into effect Article 229 of the Constitution of 1898, and to provide a prescription for licenses and for additional licenses.” Article 229 of the Constitution of 1898 is the authority under which the Legislature levied its general occupational license taxes, the pertinent part of which reads as follows :
 

 “The General Assembly may levy a license tax, and in such case shall graduate the amount of such tax to he collected from the persons pursuing the several trades, professions, vocations, and callings. All persons, associations of persons and corporations pursuing any trade, profession, business or calling, may be rendered liable to such tax, except clerks, laborers, clergymen, school teachers, those engaged in mechanical, agricultural, horticultural, and mining pursuits, and manufacturers other than those of distilled, alcoholic or malt liquors, tobacco, cigars, and cotton seed oil.”
 

 By constitutional amendment in 1910, see Act No. 1S4 of 1910, the article was amended by deleting from the above-quoted provisions the words “and mining pursuits” and the following paragraph was added thereto :
 

 “Those engaged in the business of severing natural resources, such as timber and minerals, from the soil or water, whether they thereafter convert them by manufacturing or not, may also be rendered liable to a license tax, but in this case the amount to be collected may either be graduated or fixed according to the quantity or value of the product at the place where it is severed.”
 

 Article 229 of 1898, as amended in 1910, was reproduced in the Constitution of 1913 under the same given number and in identical words. In the corresponding article 10, section 8 of the Constitution of 1921, the clause contained in the previous Constitutions, authorizing license taxes on those engaged in the occupation of severing natural resources, is eliminated. But by section 21 of the same article 10, the Legislature was authorized to levy a tax “on natural resources severed from the soil or water, to be paid proportionately by the owners thereof.” This section contains the further provision that “no further or additional tax or
 
 license
 
 shall be levied or imposed upon oil or gas leases or rights.” (Italics ours.)
 

 Undoubtedly, until the adoption of the Constitution of 1921 the prescription established by Act No. 148 of 1906 was applicable to such taxes as were imposed on the occupation of severing the natural resources at that time, because they were then authorized under section 229 of the Constitutions of 1898, as amended in 1910, and 1913, the provisions of the Constitution sought to be carried out by Act No. 148 of 1906. Under the circumstances the question that arises is: Does the change made in the Constitution of 1921, by eliminating the authority to place a
 
 license tax
 
 on those engaged in the occupation of severing the natural resources of the State and placing the authority in the Legislature to impose instead a severance tax on the natural resources, eliminate with it the application of Act No. 148 of 1906?
 

 
 *1037
 
 The several cases cited by counsel for defendant characterizing the severance tax as an excise or license tax are not apposite to their plea of prescription. It is our opinion that since Act No. 148 of 1906 was enacted for the express purpose of carrying into effect article 229 of the Constitution of 1898, which article contains the authority for the enactment by the Legislature of the general occupational license law of this State, it cannot be applicable to a severance tax imposed by a subsequent Constitution on the natural resources severed from the soil or water of this State. This is particularly true in view of the fact that at the time of the adoption of Act No. 148 of 1906 there was no provision in the Constitution authorizing a license tax on the occupation of those engaged in the severing of natural resources, and, consequently, the Legislature could not have intended to include a limitation on the actions of the State to recover a tax on the natural resources severed from the soil or water authorized by a subsequent Constitution (1921) which has the additional inhibition that “prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law.” Article 19, § 16, Constitution of 1921.
 

 An examination of Act No. 198 .of 1914 reveals that its express purpose, as evidenced by its title, is “An Act To enlarge and define the powers and duties of the Supervisor of Public Accounts,” and the act contains no provision placing a limitation on the State in its collection of any of the State’s revenues as contended by the defendant. We, therefore, conclude that the district judge properly overruled the plea of prescription.
 

 The penalties and attorney’s fees claimed in this case are authorized by section 15 of the Severance Tax Law, Act No. 140 of 1922, as amended by Act No. 5 of 1928, and Act No. 24 of the Second Extra Session of 1935, which provides that: “The tax * * * shall become delinquent after the date fixed for each quarter-annual report to be filed in the office of the Supervisor of Public Accounts, and from such time shall, as a penalty for such delinquency, be subject to a penalty of 2% per month and other penalties provided in the general revenue laws of this State.”
 

 Under the penalties provided in the General Revenue Laws of this State is included attorney’s fees, which are fixed at 10 per cent, upon the aggregate amount of the licenses and penalties. State v. Winehill & Rosenthal, 147 La. 781, 782, 795, 86 So. 181.
 

 For the reasons assigned, the judgment of the lower court is affirmed; all costs to be paid by the defendant.
 

 ODOM, J., dissents from the ruling on the plea of prescription.
 

 O’NIELL, C. J., dissents and hands down a dissenting opinion.