Dear Mr. Hebert:
On behalf of the Allen Parish School Board, you have requested our opinion concerning the sale of timber located on sixteenth section land situated solely within Allen Parish. A dilemma arises because the township within which the sixteenth section lies is located in both Allen Parish and Rapides Parish.
You have asked for our opinion on the following issues:
1) Who owns the sixteenth section land?
2) How are funds received from the sale of the timber distributed? Are the funds distributed based on the division of the township (pro rata between the two parishes) or the location of the sixteenth section (all to Allen Parish)?
3) What are the proper procedures for selling timber which is located on sixteenth section land?
4) If the Allen Parish School Board and the Rapides Parish School Board jointly own the sixteenth section land, and the Allen Parish School Board has properly declared the land as surplus, advertised and bid the timber out but Rapides Parish School Board has not, could the Rapides Parish School Board declare it as surplus after the fact and be included with and accept the bid the Allen Parish School Board has received? Asked another way, can the Rapides Parish School Board ratify an improper sale of timber, thereby making the sale valid?
Your first question, determining ownership, requires a look back into the history of sixteenth section lands. The sixteenth section is but part of a surveyed rectangular section of land. More specifically, in 1784-85, the Continental Congress established and initiated a rectangular system to survey public lands. The measured rectangle is the township. It is six miles square and contains 36 sections; the sections are 1 mile square each, or as close as possible to 640 acres.
Congress reserved and dedicated the sixteen section in each township for the support of public schools. An Act of Congress of April 21, 1806 (2 Stat. 391, Chptr 39, § 11) and March 3, 1811 (2 Stat. 662, Chptr 46, § 10) provides as follows:
 That the President of the United States be and he is hereby authorized, whenever he shall think proper, to direct that so much of the public land lying within the territory of Louisiana, as shall have been surveyed in conformity with the eighth section of this act, be offered for sale. All such lands shall, with the exception of section "number sixteen," which shall be reserved in each township, for the support of the schools within the same . . .
[Emphasis ours].
Therefore, when Louisiana was admitted into the Union in 1812, the reserved sixteenth sections in such townships vested in the state. The legislature delegated the power to maintain and dispose of the reserved sections to the respective school boards. La. R.S. 41:631-981. The school boards did not acquire the reserved land in their own right; they are mere custodians of the property. Therefore, it is our opinion that the state owns the sixteenth section land at issue.
The basic rule that section sixteen in each township is reserved for the support of the schools within the township is complicated by the fact that Louisiana's parishes were not created until after statehood and do not follow the rectangular system of surveys. The parish boundaries have been described along various natural boundaries, as well as section and township lines. Some parish boundaries follow the banks or centers of rivers, and others follow the sinuosities of lakeshores, bays and other naturally occurring points of division, as described by various survey techniques. Some parish boundaries follow natural boundaries, periodically interspersed by points and segments along section and township lines. In any event, some parishes fall within one or more townships or visa versa some townships lie within one (1) or more parishes, containing a sixteenth section or portions of a sixteenth section, which confuses distribution of proceeds derived from revenues from such sixteenth sections.
While the above discussion addresses ownership and location of the sixteenth sections, your primary concern is the proper distribution of proceeds received from the sale of sixteenth section timber. You suggest that two statutes appear to conflict with each other. La. R.S. 41:718 (1968) reads:
 A. In all cases of the lease of sixteenth section school lands, or of the sale of the timber thereon, the cash payment after deducting sufficient amount to cover the actual expenses incurred by the election and making the sale or lease, shall be credited to the account of the current school fund of the parish where the sixteenth section school lands are located. Notes representing deferred payments shall be placed in the hands of the parish school treasurer for collection, and when collected also credited to the current school fund of the parish, to be used for general school purposes. [Emphasis added].
 B. The term "general school purposes" as used in the last sentence of the preceding part of this section shall include, but not be limited to, fencing, drainage, fire prevention, insect and pest eradication, reforestation and timber management of the sixteenth section from which the funds were derived.
 * * *
The seemingly conflicting provision, La. R.S. 41:640 (1983), reads:
 B. The parish school boards of parishes within which there lies a township or any portion of a township containing a sixteenth section or any portion of a sixteenth section shall be entitled to a portion of the proceeds derived from the sale of the sixteenth section or any portion thereof, including the sale of timber thereon . . . The proceeds and revenues thereof shall be credited to the parish school boards in which such townships are situated in proportion to the percentage of the townships lying in each parish. [Emphasis ours].
You ask for our opinion as to which of the above statutes control the distribution of timber proceeds, and we note that La. R.S.41:640 received the latest amendment in 1983, and is thus the latest expression of legislative intent. To aid in interpreting the two statutes, we referred to Louisiana Civil Code Art. 8
(1993), which reads:
 Laws are repealed, either entirely or partially, by other laws. A repeal may be express or implied. It is express when it is literally declared by a subsequent law. It is implied when the new law contains provisions that are contrary to, or irreconcilable with, those of the former law. The repeal of a repealing law does not revive the first law.
We recognize that repealing a statute by implication is not favored. National Bank of Commerce in New Orleans v. Board ofSup'rs of La. State University and Agricultural and MechanicalCollege, 206 La. 913, 20 So.2d 264 (1945). Only when there is an irreconcilable conflict between two statutes will a former statute be repealed by implication. State v. Standard Oil Co. ofLouisiana, 188 La. 978, 178 So. 601 (1938).
Knowing this, we have attempted to reconcile Section 640 and Section 718 so as to avoid any conflict between them and any presumed repeal by implication. As will be discussed below, it is our opinion that Section 640, rather than 718, provides for the distribution of funds derived from timber sales.
We believe that the legislature intended Section 718 to clarify the "use" of the proceeds derived from sales of timber and school lands, that being "general school purposes", such as fencing, drainage, fire prevention, insect and pest eradication, reforestation and timber management of the sixteenth section from which the funds were derived, as defined by subsection (B). Additionally, it has previously been suggested by this office that Section 718 applies when only one school board is entitled to the proceeds, whereas Section 640 applies when multiple school boards must share the proceeds. La. A.G. Opinion No. 82-886.
Historically, Section 718 (formerly Section 2962), directed the proceeds to be credited to the "township," just as Section 640 so provides today. Louisiana Acts 1908, No. 129 reads:
 In all cases of the lease of sixteenth section school land, or of the sale of the timber thereon or of the lease or sale of oil and mineral rights thereof, the cash payment, after deducting sufficient amount to cover the actual expenses incurred by the said election and making the said sale or lease, shall at once transmitted to the State Auditor to be credited to the township
in which the property is situated, . . . [Emphasis ours].
However, the Act failed to clarify and define the "use" of the potential proceeds. Therefore, Section 718 (formerly Section 2962) was subsequently amended and reenacted until eventually an additional subsection (B) was added to clarify that some of the funds remained with the sixteenth section, for its maintenance and improvements, as discussed above, pages 2 and 3.
Subsection (B), read together with La. R.S. 41:718 (A), supra, directs timber and school land proceeds be used for "general school purposes," such as fencing, drainage, . . . Defining the use insures that at least some of the funds derived from both surface leases and timber sales will be returned to maintain and improve that sixteenth section of land. La. A.G. Opinion No. 81-1214.
Therefore, it is our opinion that Section 718 directs how the proceeds are to be used, whereas Section 640 directs how the proceeds are to be distributed. Because the two statutes are reconcilable, neither are repealed by implication.
However, if we viewed Section 718 and Section 640 as conflicting with each other, the outcome would remain the same. Such a conflict necessarily begins when the two statutes first existed simultaneously. In 1921, Section 640 was originally enacted as a Constitutional provision. La. Const. Art. XII, Section 18 (1921). As such, Section 640 effectively superseded Section 718 because a constitutional provision prevails over a statute.
In 1968, Section 718 was amended and reenacted. Even so, it still contravened Section 640 (La. Const. Art. 12, Section 18) of the 1921 Constitution, and would therefore still be unconstitutional. La. A.G. Opinion No. 77-1062. As a result of the enactment of the Louisiana Constitution of 1974, the Constitutional provision was removed and the Legislature carried Section 640 forward as a statute.
As you can see, whether you view Section 718 and Section 640 as conflicting or not, the result is the same. Section 640 governs the distribution of revenues received from the sale of timber on sixteenth section land. It requires the Allen Parish School Board and the Rapides Parish School Board to proportionately share the revenues according to the percentage of the township lying in each parish. In this case, the percentages were given to us by the Allen Parish School Board. Assuming these percentages to be correct, 75.05% of the proceeds go to the Allen Parish School Board and 24.95% of the proceeds go to the Rapides Parish School Board. La. A.G. Opinion No. 91-270.
Next, you ask for the proper procedures for selling timber on sixteenth section land. There are presently statutory provisions which govern the sale of timber on sixteenth section land, as follows:
 (1) La. R.S. 17:87, para. 2, provides that: All elections to authorize the sale of sixteenth section lands, or of timber on sixteenth section lands, shall be conducted by the parish school boards, and the funds realized from such sale, after deducting for necessary expenses connected with such elections, shall be promptly forwarded to the state auditor for credit to the proper township.
 (2) La. R.S. 41:717 (A) provides that: The parish school boards may sell the timber on sixteenth section school lands to the highest bidder for said timber, after public notice of the proposed timber sale has been given by advertisement for at least thirty days in the official journal of the parish. In the case of sixteenth sections located in townships which extend into two parishes, such timber sales shall be made by the joint action of the school boards of the two parishes, after public notice, as above provided, in the official journals of both parishes.
By Act 374 of 1956, the Louisiana Legislature amended and re-enacted Section 717 of Title 41 and removed the requirements for an election, providing the specific provisions quoted in para. (2), above, to control the sale of timber from sixteenth section school lands by parish school boards. As stated, the procedure is for the parish school board to sell the timber to the highest bidder after public notice by advertisement for at least thirty (30) days in the official journal of the parish. While the Legislature clarified the language of La. R.S. 41:717 by Act 374
of 1956, it did not clarify the language of La. R.S. 41:718 or La. R.S. 17:87 or reconcile these latter two (2) provisions with La. R.S. 41:717, which is the latest expression of legislative intent and which we find to be controlling.
Therefore, the historic requirement of an election for the sale of timber has clearly been deleted by the Legislature as of 1956 by allowing the school boards the authority to decide whether there should be such a sale, and, if so, to follow the procedures provided in the statute discussed.
If a sixteenth section is located in a township which encompasses two parishes, both parishes must conduct the sale of timber, as prescribed by La. R.S. 41:717.
Your last inquiry is whether the Rapides Parish School Board can ratify an improper sale of timber, thereby making the sale valid? Our answer to this question is in the negative, as La. R.S.41:717, discussed above, clearly requires that in the case of sixteenth sections located in townships which extend into two (2) parishes, timber sales must be conducted by the joint action of the school boards of the two (2) parishes after public notice. Therefore, if there was an improper sale it may not be ratified except insofar as this might be done by a re-advertisement and sale.
We note in your request that you have stated that the Allen Parish School Board has declared the land as surplus, and advertised and bid the timber out. Actually, there is no necessity to follow such procedures, which apparently took place pursuant to La. R.S. 17:87.6, which does not deal with sixteenth section land. Sixteenth section land cannot be disposed of under that procedure as specifically stated in La. R.S. 41:891, since title is vested in the State of Louisiana. Therefore, a school board may not declare sixteenth sections as surplus property and authorize a sale.
Sixteenth section lands can only be sold with the concurrence with the State after a vote of the people of the township pursuant to La. R.S. 41:711 and 41:712.
We hope this information is of assistance to you and if we may be of further help, please advise us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: __________________________ GARY L. KEYS Assistant Attorney General
RPI/GLK/JMM/bb